WALTER COX v. TERRITORY.·

No. 2223, Okla. T. Opinion Filed September 14, 1909.

(104 Pac. 378.)

1. **VENUE—Jurisdiction in Either· County.** Where domestic animals, as named in section 2480 (Wilson's Rev. & Ann. St. 1903) are stolen in one county in this state and taken into another, the jurisdiction of the offense is in either county, under section 5224, Wilson's Rev. & Ann. St. 1903.

2. **APPEAL—Review—Questions of· Fact.** This court will not disturb the judgment of the trial court for lack of evidence, when there is competent evidence reasonably tending to sustain the judgment of the lower court.

3. **LARCENY—Possession of Property Recently Stolen.** An instruction in the following language: "You are instructed, as a matter of law, that if a person is found in the possession of. property which has been recently stolen, such possession is prima facie evidence that such person is guilty of the larceny of the property, unless such possession is satisfactorily explained to the jury"—is error.

4. **CONDUCT OF COUNSEL—Argument of ,Prosecuting Attorney.** A prosecuting attorney must confine his argument to a fair discussion of the issues in the case and the legitimate argument on the part of the defense.

(Syllabus by the Court.)

*Appeal from District Court, Pawnee County; Bayard Hainer, Judge.*

Walter Cox was convicted of stealing a horse, and he appeals. Reversed.

This is an appeal from a judgment and sentence of the district court of Pawnee county. The plaintiff in error, Walter Cox, was tried and convicted in November, 1906, on an indictment

drawn under section 2480, Wilson's Rev. & Ann. St. 1903, charging him with stealing a horse. The horse was stolen in Payne county, and taken into Pawnee county, where the prosecution was had.

*C. L. Burdick* and *L. W. Reece,* for plaintiff in error.—Improper argument of prosecuting attorney: Hughes' Cr. Law and Proc., pp.748 and 749; *State v. Tennison,* 42 Kan. 330; *State v. Balch,* 31 Kan. 465; *People v. Quick,* 58 Mich. 321; *Wilson v. Territory,* 9 Okla. 331; *People v. Mitchell,* 62 Colo. 411; *Raggis v. People,* 135 Ill. 545; *State v. King,* 64 Mo. 595.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the Territory.

OWEN, JUDGE. One assignment of error is that the indictment was improperly returned for the reason that the deputy clerk acted in some instances and discharged certain duties by statute assigned to the clerk. Since counsel for defendant have not considered this point of sufficient importance to brief it, or cite any authorities for the assistance of this court in determining the question, we shall not consider this assignment.

Four reasons are urged for reversing the case: First, that the district court of Pawnee county did not have jurisdiction to try the defendant, for the reason that the horse was stolen in Payne county and taken into Pawnee county; second, that the evidence was not sufficient to warrant a conviction; third, that the court erred in the instructions to the jury; fourth, that the county attorney, in closing the argument for the state, made the statement that if the evidence in this case did not bring about a conviction, he would quit prosecuting horse thieves in Pawnee county. We shall determine these questions in the order named.

In order to determine the question as to the jurisdiction of the court, it will be necessary to determine whether there was any statute that made it a crime to steal property in one county and carry it into another county of Oklahoma; i. e., whether the carrying the property into another county would continue the offense.

Counsel for defendant urges that there was no such statute in force at the time this case was tried. Section 5224, Wilson's Rev. & Ann. St. Okla. 1903, is as follows:

"When property taken in one county, by burglary, robbery, larceny, or embezzlement, has been brought into another, the jurisdiction of the offense is in either county," etc.

It is contended that the term "larceny" as used here, does not include the crime of "stealing" a horse, and therefore this section does not apply to this case. If this section does not apply, then it must be conceded that the trial court had no jurisdiction. The question to be determined is whether under section 5224 the court had jurisdiction. It had if the term "larceny" as used here includes "stealing" a horse. The indictment in this case was returned under section 2480, Wilson's Rev. & Ann. St. 1903, which is as follows:

"That if any person shall steal any stallion, mare, colt, gelding, ridgling, * * * he shall be guilty of a felony, and on conviction thereof shall be punished by confinement in the territorial penitentiary for a term of not less than one or more than ten years."

It is urged that this statute makes stealing a domestic animal a separate statutory offense from larceny, and that the law of larceny does not apply to this offense. In other words, that stealing a horse under this section is not larceny, and that larceny in the sense used in section 5224 does not include stealing a horse. Counsel relies on the cases of *Hughes v. Territory,* 8 Okla. 28, 56 Pac. 708; *Sullivan v. Territory,* 8 Okla. 499, 58 Pac. 650; *Woodring v. Territory,* 14 Okla. 250, 78 Pac. 85; *Howard v. Territory,* 15 Okla. 199, 79 Pac. 733; *Woodring v. Territory,* 15 Okla. 309, 81 Pac. 631. A careful consideration of these cases has convinced us that they do not support the contention of counsel.

The statutory definition of larceny, as found in section 2465, Wilson's Rev. & Ann. St. 1903, is as follows:

"Larceny is the taking of personal property, accomplished by fraud or stealth, and with intent to deprive another thereof."

. In the case of *Hughes v. Territory,* referred to above, the de-

fendant was convicted of the crime of stealing a cow. The point at issue was that the instructions of the trial court were defective and prejudicial to the defendant because the jury was instructed that the intent need not be established; that it would be presumed from an unlawful taking. The court in that case, on page 29 of 8 Okla. 56 Pac. 709, says:

"It is urged that this instruction is defective and prejudicial to the defendant, in that it instructs the jury that intent need not be established; that it is presumed from an unlawful taking. The instruction may have been framed by the trial court upon the theory that intent was not an ingredient or element of the crime of which the defendant was being tried. In order that we may fully understand the issues presented we will have to look to the language of the statute which creates the offense. It is as follows: 'That if any person shall steal any ass, genet or mule, or any bull, cow, calf, steer or stag, he shall be guilty of a felony, and, on conviction thereof shall be punished by confinement in the territorial penitentiary for a term of not less than one nor more than ten years.' The statute does not say one word about intent. Intent is nowhere expressed in the entire act. And this court has held that where a statute creates an offense and does not make intent a necessary ingredient of such offense, it is unnecessary to plead or prove it. * * * But does this offense fall within that rule? The statute says 'that if any person shall steal any stallion,' etc., 'he shall be guilty of a felony, and, on conviction thereof, shall be punished by confinement in the territorial penitentiary,' etc. What did the Legislature mean when it used the word 'steal'? There is nothing about the act in which the word appears to indicate that it was intended to place upon it a meaning different from that given to it in its ordinary and legal use. 'The word "steal" has a uniform signification, and in common, as well as legal, parlance, means the felonious taking and carrying away of the personal goods of another.'"

Again, on page 32 of 8 Okla., 56 Pac. 709, in the same case, we find the following:

"An examination of the authorities will show that 'larceny' and 'stealing' at common law had the same meaning; and consequently stealing, as here defined, is the wrongful or fraudulent taking and removing of personal property, by trespass, with a fel-

onious intent to deprive the owner thereof, and to convert the same to his (the taker's) own use."

We quote at length from this decision to make clear the fact that the issue there was as to whether the intent to deprive the owner of the property, and the intent to convert the property to the taker's use, must be pleaded and proven. That is not the issue in the case under consideration. The court in that case held that it was necessary to prove an intent, because the word "steal" as used in that section of the statute was used in its ordinary sense and common law meaning, and that it was understood to mean "taking with a felonious intent to deprive the owner thereof and to convert the same to the taker's use."

In the case of *Sullivan v. Territory*, above referred to, the court holds that an indictment drawn under section 2480 was defective because it failed to allege an intent, using this language, as it appears on page 501 of 8 Okla., 58 Pac. 651:

"The indictment is fatally defective under the 1895 statute, for the reason that it fails to charge that the cow was taken by the defendant with a felonious intent to convert the same to his (the taker's) own use. It is also fatally defective under the 1893 statute, for the reason that it does not allege the value of the animal charged to have been stolen. The demurrer to the indictment should therefore have been sustained."

The 1895 statute (Laws 1895, p. 104, c. 20, art. 1, § 1) referred to by the court is section 2480 above quoted, and the 1893 statute (section 2371) referred to is section 2465, above quoted. Thus we see the court in Hughes' Case held that the word "steal" meant to take with a felonious intent, and therefore it was necessary to prove the intent; and in the Sullivan Case the court held the indictment defective because it failed to charge the felonious intent.

In the case of *Woodring*, 14 Okla. 250, 78 Pac. 85, the court, in construing section 2480, held that it was not necessary to allege the value of the animal stolen. In the case of *Howard v. Territory*, 15 Okla. 199, 79 Pac. 773, and *Woodring v. Territory*, 15 Okla. 309, 81 Pac. 631, the court, in construing section 2480,

held that an indictment need not allege the value of the animal stolen.

In order to determine the issue in this case it is not necessary for us to either approve or condemn the holding in these five cases. The issue here is not as to whether it was necessary to allege and prove intent, or whether it was necessary to allege and prove value. The issue here is, does the term "larceny" in section 5224 include stealing in violation of section 2480? And, in order to determine that question, we must determine what is meant by the word "steal" as used in section 2480. It must be conceded that under the common law the words "steal" and "larceny" have been used interchangeably. Anderson's Law Dictionary defines steal: "To commit larceny." Webster's International Dictionary defines the word thus: "Steal: To take and carry away feloniously; to take without right or leave, and with intent to keep feloniously; as to steal the personal goods of another; to practice, or be guilty of, theft; to commit larceny or theft." The same authority defines "larceny" to be "the unlawful taking and carrying away of things personal, with intent to deprive the right owner of the same; theft." Blackstone uses the words "larceny," "steal," and "theft" interchangeably. We have seen that our statutory definition of larceny, as given in section 2465, is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof. Stealth, according to Webster, is "the act of stealing; theft." Then, we may read section 2465 as meaning, "Larceny is taking personal property by stealing; by theft"; and we may read section 5224 as meaning "when property taken in one county by stealing or by theft," etc.

Counsel insists that because section 2480 specifically prohibits the stealing of any live stock, and provides a punishment greater than that prescribed under section 2469 for grand larceny, section 2480 creates a distinct statutory offense, and takes the stealing of a horse out of the larceny class; that this section, in prescribing a

2 Cr.—43

greater punishment for taking a horse and using the word "steal," repeals the statute against larceny, so far as it applies to live stock. Section 2469 provides that grand larceny is punishable by imprisonment in the territorial penitentiary not exceeding five years. One of the established rules to govern in the construction of statutes is that an existing statute is not repealed by the passing of a subsequent statute pertaining to the same matter, unless the two are so inconsistent that they cannot stand together. These statutes can be construed together and all of them stand.

A similar question arose in Arkansas under a very similar condition with reference to the statutes governing larceny cases. Section 1627, as found in Mansfield's Digest of the Statutes of Arkansas, provided a punishment in the penitentiary for the larceny of property where the value exceeded $10. Section 1628 of the same statute, but of a later act of the Legislature, provided a punishment for "every person who shall * * * steal * * * any kind of cattle." This section makes no reference to value. Section 1655 of the same statute provides that it shall not be larceny to take cattle from the open range, if they are not branded, and are more than 12 months of age. The question arose as to whether one of these statutes repealed the other, and the Supreme Court, in passing on the question in the case of *Thompson v. State,* 60 Ark. 59, 28 S. W. 794, used this language:

"This rule as to the repeal of a prior by a subsequent statute is well stated in *Chamberlain v. State,* 50 Ark. 137, 6 S. W. 524, by Judge Smith as follows: 'But subsequent laws do not abrogate prior ones, unless they are irreconcilably in conflict. The courts have always leaned against implied repeals. A general affirmative statute does not repeal a prior particular statute, unless negative words are used, or unless there be an invincible repugnancy between the two. The more specific provision controls the general, without regard to their order and dates. The two acts are interpreted as operating together; the specific provisions furnishing exceptions and qualifications to the general rule.' "

And the court cites with approval, *State v. Kirk,* 53 Ark. 337, 13 S. W. 925; *Ex parte Coleman.* 54 Ark. 237, 15 S. W. 470.

Section 2468 of our statute provides that grand larceny is committed when the property taken is of value exceeding $20, or when the property taken, although not of value exceeding $20, is taken from the person of another. Section 2469 prescribes the punishment for grand larceny. Section 2480 modifies section 2469 as to the punishment when the property taken was any of the domestic animals named in section 2480. In construing section 2480, in the case of *Hughes v. Territory,* above referred to, on page 35 of 8 Okla., 56 Pac. 710, the court used the following language:

"The act is entitled 'An act for the better protection of stock raisers.' Cattle stealing had become so common, particularly in the western part of the territory, that it became necessary for the Legislature to pass a law which would more fully protect those who had herds of cattle in the western counties; the general law on larceny being inadequate."

The court proceeds to point out the difference between the punishment prescribed in this section of the new statute and section 2469 of the old statute, and then uses this language:

"There is a reason for this difference. The persons who steal cattle and other domestic animals, as a rule, steal them from the owners thereof with the intent to appropriate the same to their own use. They steal for gain; for the purpose of selling and profiting thereby. In fact the persons that the statute was more particularly intended to punish were the persons who were stealing cattle and other domestic animals as a means of livelihood; and the law on larceny, as divided into degrees under the Statutes of 1893, was wholly inadequate. Many of the animals stolen were not of the value of more than $20; and therefore the law did not prevent the commission of the crime, and the punishment for petit larceny was not sufficient to prevent the larceny of such animals. Hence the creation of the statute of 1895."

We see that the court in that case, in effect, held that section 2480 made a different degree of larceny. Section 2467, which was part of the act of 1893 (St. 1893, §§ 2371-2384), enacted the common-law degrees of larceny. The punishment for petit larceny was a fine and imprisonment in the county jail; for grand larceny

imprisonment not to exceed five years, and in order to make the offense grand larceny the value must be $20. We think the reasons given in the Hughes Case as to why the Legislature passed the act of 1895, which is section 2480 here, making the punishment greater for stealing live stock, are probably correct. But the reasons given do not take the offense of stealing live stock out of the class of offenses included in the term "larceny."

Stealing a domestic animal named in section 2480 is larceny in the sense in which the word "larceny" is used in section 5224, and the court in Pawnee county had jurisdiction where the offense consisted of stealing a horse in Payne county and taking him into Pawnee county. It has been uniformly held in similar cases that each instant that the stolen property continues in the possession of the accused the trespass amounts to a new offense, and the crime is considered as having actually been committed in the county where the offender is found with the property; and the law will adjudge that the offense has in truth been committed there; that is, in the county into which the stolen property has been brought. *Haskins v. People,* 16 N. Y. 344; *Com. v. Dewitt,* 10 Mass. 154; *Com. v. Rand,* 7 Metc. (Mass.) 475, 41 Am. Dec. 455; *Keith v. Territory,* 8 Okla. 307, 57 Pac. 834.

As to the second reason urged—i. e., that the evidence is not sufficient to support the verdict—the jury are the judge of the facts, the weight of the evidence, and the credibility of the witnesses. This court will not disturb a verdict where there is competent evidence in the record reasonably tending to sustain the verdict. In this case it was made a question of fact as to whether the defendant did in fact take the horse in Payne county. The issue was made on that question, and the proof directed to it. There being competent testimony on the part of the state, reasonably tending to prove the issue, the verdict will not be disturbed for that reason. The decisions are uniform as to the rule that the judgment of the trial court will not be disturbed where there was competent evidence reasonably tending to sustain the judgment. *Jenks et al. v. McGowan,* 9 Okla. 306,, 60 Pac. 239; *Bank v.*

*Earle,* 2 Okla. 617, 39 Pac. 391; *Light v. Bank,* 2 Okla. 543, 37 Pac. 1075; *Mullaney et al. v. Humes,* 48 Kan. 368, 29 Pac. 691; *Gardner v. King,* 37 Kan. 671, 15 Pac. 920; *Harrington v. Stone,* 39 Kan. 176, 17 Pac. 853.

The third reason alleged—i. e., that the court erred in its instructions to the jury—we deem more serious. The objection is well taken. Exceptions were saved to each of the instructions. The instructions, as given, seem to be substantially correct, except instruction 8, found on page 48 of the record. This instruction is in the following language:

"You are instructed, as a matter of law, that if a person is found in the possession of property which has been recently stolen, such possession is *prima facie* evidence that such person is guilty of larceny of the property unless such possession is satisfactorily explained to the jury. And in this case, if you find from the evidence that the property described in the indictment was stolen, and that shortly thereafter the same was found in the possession of the defendant, and that the defendant has failed to explain, to the satisfaction of the jury, how he obtained possession thereof, then such fact may be considered by the jury, in connection with all the other evidence, in determining whether or not the defendant is guilty of the offense charged in the indictment."

The giving of this instruction was reversible error. It has been urged by the attorney for the state, conceding that the first sentence of the instruction is error, that the last sentence cures the error. In this we cannot agree. The first sentence states to the jury what the law is; the last sentence undertakes to apply it to the case at bar. We can easily understand how the prosecuting attorney could emphasize the first sentence; then proceed to argue the explanation offered by defendant and his witnesses. This is not the law. Possession of property recently stolen, unexplained, is a circumstance to be considered and given such weight as the jury may see fit. The jury is the sole judge as to what weight should be given this circumstance; and, even though the defendant makes no attempt at explanation of the possession, the jury would not be authorized to convict unless from all the facts and circumstances in the case, after giving such weight as they

see fit to such possession, they believed the defendant guilty. This court held a similar instruction reversible error in · the case of *Slater v. United States*, 1 Okla. Cr. 275, 98 Pac. 110. Again in the cases of *Askew v. United States, ante,* p. 155, 101 Pac. 121, and *Pickering v. United States, ante,* p. 197, 101 Pac. 123. The authorities cited and reasons given in those cases are approved here, and we deem it unnecessary to cite additional authorities on this question.

As to the fourth reason urged—i. e., that the county attorney in . his closing argument to the jury made the statement that if the evidence in this case did not bring about a conviction, he would quit prosecuting horse thieves in this county—we think this statement improper, and calculated to prejudice the minds of the jury against the defendant. It was the statement of an officer of · the court, in the discharge of his duty, and was to the effect that, after his investigation of the case, he was so thoroughly convinced of the guilt of the defendant that a failure to convict would be an outrage on justice, and that he, the sworn officer of the court, would feel so outraged that he would not prosecute any more horse thieves. We think this statement was calculated to influence the minds of the jurors and arouse their prejudice against the defendant. True, the court instructed the jury not to consider the statement, but in our opinion this did not sufficiently cure the evil. The attorney did not retract or withdraw the threat. Attorneys, on either side, in their arguments ought not go out of the record, and they ought not throw into the scales with the evidence their personal and official opinion and desire as to what should be done. The prosecuting attorney in closing the argument should be confined to a reply to the legitimate argument on part of the defense and a fair discussion of matters in the record. The average juror holds in high regard, and properly so, the regularly elected prosecuting attorney. The people by electing him have reposed great confidence in his ability and integrity, and the power thus given him ought not be used to supply the lack of evidence, or . to make greater the weight of the evidence in any

case. The authorities are numerous as to what constitutes improper conduct. They are uniform in holding any statement improper that is calculated to inflame the minds of the jurors, arouse their prejudice or appeal to their passions.

In the case of *People v. Quick,* 58 Mich. 321, 25 N. W. 302, the prosecuting attorney made this statement:

"I stand here to-day under the solemnity of my official oath, and say to you, as a man and a citizen, that I believe they not only lied, but I believe they committed wilful and deliberate perjury. I do not believe that they were there that night, nor do I believe that that man, the defendant, ever in God's world took that watch from the sidewalk, but he stole it from the person of David Wright, and then hid it away within five minutes."

The Supreme Court, in condemning the statement, in part, say:

"This language came from an officer whose sworn duty required him to act only in furtherance of justice, and who is bound by statutory requirements to stand entirely impartial between the complainant and the prisoner. When such an officer gives the jury to understand that what he says is under the sanction of his official oath, and the court, when applied to, declines to correct that statement, it cannot be supposed that jurors may not give credence to it, and govern their decision more or less by it. The impropriety of expressing a personal opinion to the jury upon disputed facts has always been regarded as great, and has in some notable instances led to unpleasant strictures on the character of celebrated counsel. Whatever allowance may be made for professional enthusiasm, a deliberate and solemn averment of counsel's opinion should never be allowed to influence the jury and, when given, as here, as an opinion under oath, it should have been at once shut out, and its influence guarded against by proper instructions as requested. For these reasons the judgment must be reversed."

In the case of *People v. Fielding,* 158 N. Y. 542, 53 N. E. 497, 46 L. R. A. 641, 70 Am. St. Rep. 495, the court, in part, say:

"While public prosecutors should not be restricted in 'fair argument, comment or appeal' to the jury, they should not be allowed to state facts not proved, or to make inflammatory appeals to

passion and prejudice, or to threaten the jury with popular denunciation, or to tell the jurors that they would commit the 'unpardonable sin' if they failed to convict the defendant."

In the case of *Vickers v. United States,* 1 Okla. Cr. 452, 98. Pac. 467, this court, in an opinion by Judge Doyle, in passing on the statements made by the prosecuting attorney, in part, says:

"The overnourished zeal of counsel, displayed in the attempt to seek conviction for crime, frequently calls for condemnation on the part of appellate courts, especially when in the closing argument to the jury the attorney for the state travels outside the evidence for his subject-matter, or indulges in truculent abuse of the accused. *Smith v. People,* 8 Colo. 459, 8 Pac. 920; *Martin v. State,* 63 Miss. 505, 56 Am. Rep. 813; *Garlitz v. State,* 71 Md. 293, 18 Atl. 39, 4 L. R. A. 601. * * * When remarks of the prosecuting attorney to the jury, by appeal either to their fears or vanity, tend to coerce and cajole them, then a verdict of conviction is error. *People v. Lange,* 90 Mich. 454, 51 N. W. 534. * * * A public prosecutor is presumed to act impartially in the interest only of justice. If he lays aside the impartiality that should characterize his official action to become a heated partisan, and by vituperation of the prisoner, and appeals to prejudice, seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and seeks no conviction through the aid of passion, sympathy or resentment. The only way to secure fair trials is to set aside the verdicts so procured."

The attorney for the state urges in the case under consideration that the error was corrected by the court's instruction to the jury that they should not consider the statement made by the county attorney. The admonition from the court could not cure the evil. The jurors had received the impression; they could not forget the intense feeling displayed by the words and manner of the prosecuting attorney. *Wilson v. Territory,* 9 Okla. 331, 60 Pac. 112; *State v. Boyd,* 5 Kan. App. 802, 48 Pac. 998; *State v. Tennison,* 42 Kan. 332, 22 Pac. 429; *State v. Balch,* 31 Kan. 465, 2 Pac. 609. In the case of *State v. Balch,* the court said:

"Nor can the principle be tolerated that convictions for violated law may be procured or brought about by the inauguration

and accomplishment of other violations of the law.   It is also true that in this case the court below instructed the jury that the statement made by the county attorney should not be allowed to work any prejudice to the rights or interests of the defendant.   But under the authorities, the evil done by such an infringement of the law—an infringement of the law by the prosecuting officer of the state—cannot be remedied or cured by any mere instruction of the court.   The only complete remedy, if the defendant is convicted, is to grant a new trial on his motion."

For the errors mentioned, the case will be reversed and remanded to the district court of Pawnee county, with instructions to grant a new trial.

FURMAN, PRESIDING JUDGE. and DOYLE, JUDGE, concur.