CLAUDE CHEEVES v. STATE.

No. A-3609—Opinion Filed Dec. 1, 1920.

Rehearing Denied April 6, 1921.

(196 Pac. 726.)

(Syllabus.)

1.    **LARCENY—Grand Larceny—Sufficiency of Evidence.** In a prosecution for larceny evidence tersely stated in the opinion, held sufficient to support the verdict.

2.    **EVIDENCE—Possession of Other Stolen Property.** In a prose-
      cution for larceny, where the defendant's possession of property,
      charged to have been stolen, is attempted to be accounted for,
      it is competent to show the defendant's contemporaneous posses-
      sion of other stolen property.

3.    **SAME—Possession by Codefendant.** In a prosecution for larceny,
      where there was evidence tending to show that the defendant and
      his codefendants acted in concert and participated in the lar-
      ceny, evidence showing possession by a codefendant of a part of
      the stolen property was competent and admissible, in connection
      with evidence that a part of the stolen property was found in
      the possession of the defendant.

4.    **SAME—Res Gestae—Explanations by Defendant.** In a prose-
      cution for larceny, what the defendant said in explanation of
      his possession of a part of the stolen goods, immediately upon
      its discovery with him, is a part of the res gestae and as
      such admissible in evidence in his favor as well as adversely
      to him.

2.    **APPEAL AND ERROR—Record—Excluded Testimony.** Error
      cannot be predicated upon a ruling excluding testimony, where
      the testimony desired is not shown in the record, nor any state-
      ment made as to what the proposed testimony would be.

6.    **TRIAL—Exclusion of Testimony—Offer of Proof.** In order to pre-
      serve an available objection to the exclusion of testimony, a
      proper question must be asked, and when objection thereto is
      sustained, an offer must be made showing what testimony will
      be given if the witness is permitted to answer. This is proper,
      in order to enable the trial court to determine whether the tes-
      timony is competent, and is necessary to present any question
      on appeal.

*Appeal from District Court, Comanche County;*

*Cham Jones, Judge.*

Claude Cheeves was convicted of grand larceny, and
he appeals. Affirmed.

*A. J. Taft,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall* and *E. L.
Fulton,* Asst. Attys. Gen., for the State.

DOYLE, P. J.   This appeal is from a judgment ren-

dered upon the verdict of a jury finding the defendant, Claude Cheeves, guilty of the crime of grand larceny and fixing his punishment at five years' imprisonment in the penitentiary.

The information, in substance, charges that in Comanche county, on the 5th day of June, 1918, Claude Cheeves, Will Nicholson, and J. E. Knight did then and there steal certain personal property, consisting of shoes, shirts, underwear, silk handkerchiefs, neckties, clothing, a bolt of silk, six hams and some bacon, all of the aggregate value of $495, the personal property of O. M. Murray and Walter Davis.

A severance was granted, and the defendant Cheeves was tried on the 21st day of February, 1919.

The principal question in the case appears to be whether or not the evidence is legally sufficient to sustain the conviction.

The evidence shows that Murray & Davis, a partnership, conducted a mercantile business at Chattanooga, their store being on the Comanche county side of the street. On the night of the 31st day of May, 1918, the store was broken into, and the merchandise described in the information was stolen. A week before the store had been broken into, and about $400 worth of goods stolen. The defendant Cheeves lived at Duncan; the defendant Nicholson lived five or six miles southeast of Duncan; the defendant, Knight, lived west of Duncan.

O. M. Murray, of the firm of Murray & Davis, testified that about 60 days after the goods were stolen he identified some of the goods in the sheriff's office at Duncan; that he went with the county attorney and three

deputy sheriffs to the defendant Nicholson's place, and there found a part of the stolen goods, and from there they went to the defendant Cheeves' place in Duncan, and there found some more of the stolen goods; including the trousers that Cheeves had on; that from there they went to Knight's place, and there found a part of the stolen goods. He identified certain goods found at Cheeves' place by the brands, stock marks, and price marks thereon; that some of the goods found in the Cheeves' home were in a folding bed and some were between the mattress and springs of a bed; that the value of the goods taken that night was over $500; that the same were not taken with his knowledge or consent.

On cross-examination he was asked:

"Q. Didn't this defendant tell you at that time those things did not belong to him? A. He said the pants did not belong to him; that a young man named Eddie Knight had left a shirt and the pants there."

Another witness employed as a clerk by Murray & Davis identified by the stock and price marks thereon certain merchandise offered in evidence that was found in the possession of the defendant, Cheeves, as a part of the goods taken, including some bolt silk.

Will Justice testified:

"I live at Chattanooga. The next morning after the store was robbed I looked in the alley behind the store. I could see two auto tracks that looked a little fresher than others that came up to the alley by the old ice house. I could see where one car came along and another behind it, and then the tracks hit the street going east. I was with the officers at the defendant's place when Mr. Mur-

ray identified the goods found. When we went to Cheeves' place all he said as to where he got the goods was that the coat to match the pants he had on was in the house. We went in the house, and he sat on the bed. I took a coat from the closet and said to him, 'Is this the mate to those pants you have on?' he said, 'Yes;' I said, 'How long have you had this suit?' he said, 'about a couple of months;' I said, 'Where did you get this suit?' and he would not give me an answer. That is all he had to say about any of the stuff in any way. I arrested him, and brought him back with me."

I. B. Gossett, city marshal of Duncan, testified:

"I am acquainted with the defendants. I have seen them together. I have not seen Nicholson with them much, but I have seen the other two together lots. The defendant Cheeves is tall and slim."

J. C. Perry testified:

"I run a grocery store at Faxon, and as I was going home the evening of the night that the store at Chattanooga was robbed I saw a strange car come into Faxon from the east. The an driving the car was a slim spare made fellow. The car stopped about a quarter of a mile from my home. In a few minutes another car stopped there. They were there about 10 minutes, and then both went on towards Chattanooga."

S. M. Vandergriff testified:

"I live at Duncan. I am deputy sheriff, and acquainted with the defendants Cheeves, Nicholson, and Knight. I was out at Nicholson's place in July looking for automobile accessories, and found some bolts of silk and some automobile tires. I took the silk and delivered it to the sheriff. About August 12th, I was with Mr. Murray and the others when they searched the defend-

ant Cheeves' place. We found a suit of clothes and some dress goods. I don't remember exactly. The defendant Cheeves was there."

The merchandise identified by the witnesses was offered in evidence. When the state rested, the defendant moved the court to direct a verdict of not guilty, and to discharge the defendant, for the reason "that there is no evidence in this case sufficient to connect the defendant with the commission of the crime charged." The motion was overruled, and the defendant excepted.

Joe Rhinefort, called as a witness for the defendant, testified:

"I was in the house some of the time and outside some of the time. I was around there when these goods were taken from the possession of the defendant."

He was then asked:

"Q. Will you tell the jury what Claude Cheeves said about the goods at the time you took them from him."

To this question the state objected. The objection was sustained, and the defendant excepted.

Will Nicholson testified:

"I am one of the defendants. I live in New Mexico. In June and July, 1918, I lived six miles south east of Duncan. Claude Cheeves planted cotton for me in May, 1918. I paid him $1.50 per day in money and his board. My brother Otto was staying with me a part of the time. He went to the army June 24th, and he has been discharged. In May, when Cheeves was working for me, he

bought some silk handkerchiefs and a piece of silk from my brother Otto, and took it home with him when he left there. I remember when the officers came out and got some automobile tires out of my barn. I could not say where my brother got the silk and silk handkerchiefs he sold to Cheeves. When my brother went to the army he left those things there in his trunk, and the trunk was in my house. That is all I had to do with them."

The defendant herein did not testify.

The presumption arising from the possession of stolen property is one of fact, and not of law, and possession of property recently stolen, unexplained, is a circumstance to be considered and given such weight as the jury may see fit. The jury is the sole judge as to what weight should be given this circumstance; and, even though the defendant makes no attempt at explanation of the possession, the jury would not be authorized to convict unless from all the facts and circumstances in the case, after giving such weight as they see fit to such possession, they believe the defendant guilty. *Cox v. Territory*, 2 Okla. Cr. 668, 104 Pac. 378.

Mr. Bishop says:

"When the fact of a theft has been shown, and the question is whether or not the defendant committed it, his possession of the stolen goods, either sole or joint with others, at a time not too long after the stealing, is a circumstance for the jury to consider and weigh in connection with the other evidence. Its significance will vary with its special facts, and with the other facts of the case, among which are the nearness or remoteness of the proven possession to the larceny, the nature of the thing as passing readily from hand to hand or not, what explanations he made on it being discovered that he had the goods, together with such other facts as ought reason-

ably to influence a juror's opinion." 2. Bish. New. Cr. Proc. par. 740.

In order to establish the defendant's guilt it was not necessary that any of the witnesses should have seen him or his codefendants in the vicinity of the premises about the time the larceny was committed. It rarely happens that perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must therefore ordinarily be had to circumstantial evidence.

The instructions fairly submitted the law of the case, and no objection was made or exception taken to any of them. The court instructed the jury that unless they believed beyond a reasonable doubt that the defendant, acting alone, or in conjunction with others, stole the goods, they should acquit, and that they should acquit if the circumstances in evidence were inconsistent with any other conclusion or hypothesis than that of the guilt of the defendant, and further instructed that:

"The mere fact that the defendant is found in possession of recently stolen property is not, within itself alone, sufficient to justify a conviction, unless there are other circumstances and proof in evidence which, together with such possession, convinces you beyond a reasonable doubt of the defendant's guilt of the crime charged."

The record shows that the proof of the defendant's guilt does not depend alone upon the proof of possession of a part of the stolen goods. There were other inculpatory circumstances in evidence, and, carefully considering all the evidence, our conclusion is that it was amply sufficient to sustain the verdict of the jury.

Some exceptions were taken on the trial to the rulings of the court, but in the motion for new trial and in the petition in error no reference is made to the rulings of the court in the admission and rejection of evidence. However, in his brief the defendant complains that the court erred in admitting over his objections evidence showing that a part of the stolen goods were found in the possession of his codefendants Nicholson and Knight. If the defendant and his codefendants, as the evidence tends to show, were together when the goods were stolen, and participated in the larceny, evidence showing possession of a part of the stolen goods by any one of them, recently after the theft, was competent and admissible as a circumstance tending to show the guilt of the defendant, and was properly allowed to go to the jury to be considered by them in connection with the other circumstances.

The defendant also states that—

"All of the evidence introduced by the state in regard to any automobile accessories found at Cheeves' house or Nicholson's home was incompetent for any purpose, and should have been ruled out and taken from the consideration of the jury."

It is said in Ruling Case Law that:

"In cases of larceny, if properly connected, the proof that other stolen property was found in the possession of the defendant with the property charged to have been stolen is admissible for any of four purposes: (1) To prove felonious intent; (2) to prove that the alleged theft was a part of a continuous transaction or scheme of larceny; (3) to identify the defendant; (4) to identify the stolen property. In all of these cases, however. it must not only be shown that the defendant was found

in possession of the property, and that it was stolen; but, in addition thereto, it must appear from the proof that there was some connection between it and the property charged in the indictment to have been stolen." 17 R. C. L. p. 76.

In *Davis v. State,* 7 Okla. Cr. 322, 132 Pac. 560, it is said:

"When the defendant's possession of property, recently stolen, is attempted to be accounted for, it is competent to show the defendant's contemporaneous possession of other stolen property."

The defendant also complains that the court erred in refusing to allow the witness Rhinefort to answer the question:

"Will you tell the jury what Claude Cheeves said about the goods at the time you took them from him?"

At the common law, when stolen goods were discovered in possession of a party recently after being stolen, what he said in explanation of his possession of the property immediately upon its discovery with him and before he had time to concoct a story is a part of the *res gestae,* and admissible as such. 2 Bish. Crim. Proc. par. 746; Whart. Crim. Ev. (9th Ed.) par. 761; *Mitchell v. Territory,* 7 Okla. 527, 54 Pac. 782; *Smith v. Territory,* 14 Okla. 518, 79 Pac. 214.

What the defendant said in this case, immediately upon the discovery of a part of the stolen goods at his place, was admissible in evidence in his favor, as well as adversely to him. However, the record here shows that no offer was made as to what the witness would testify

to if permitted to answer. The necessity for the offer, as to what the proposed testimony would be, where an objection to a question is sustained, is stated in 3 C. J. p. 825, par. 736, as follows:

"As a general rule, in order to reserve an available objection to the exclusion of evidence, a proper question must be asked, and, on objection thereto, an offer must be made at the time, showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all the facts necessary to establish its admissibilty."

Error cannot be predicated upon a ruling excluding testimony, where the testimony desired is not shown in the record, nor any statement made as to what the proposed testimony would be. *White v. State,* 4 Okla. Cr. 143, 111 Pac. 1010; *Warner v. State,* 6 Okla. Cr. 1, 115 Pac. 812, 34 L. R. A. (N. S.) 1121; *Stouse v. State,* 6 Okla. Cr. 415, 119 Pac. 271.

Upon a careful consideration of the record in this case and all questions involved therein, we find no error justifying a reversal. Accordingly, the judgment is affirmed.

ARMSTRONG and MATSON, JJ., concur.