## DAN MARA v. STATE.

No. A-4345.    Opinion Filed Feb. 16, 1924.

(223 Pac. 204.)

(Syllabus.)

**Burglary—Evidence Sustaining Conviction of Burglary in Second Degree.** Evidence examined, and held sufficient to sustain the verdict and judgment.

Appeal from District Court, Tulsa County; Redmond S. Cole, Judge.

Dan Mara was convicted of burglary in the second degree, and he appeals. Affirmed.

W. V. Pryor and C. B. Rockwood, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J.    Dan Mara, Earl Stanley, and W. A. Warren were jointly charged by information in the district court of Tulsa county with the crime of burglary in the second degree, alleged to have been committed on the 19th day of January, 1922, by breaking into and entering the store building of one W. R. Jeffries, located in the town of Glenn Pool, Okla., and stealing therefrom certain goods, wares, and merchandise belonging to the said Jeffries, which were then and there kept in said store building. Upon a joint trial each of the defendants was found guilty as charged and the punishment fixed as to Stanley and Warren at seven years' imprisonment in the state penitentiary and as to Mara at two years in the state reformatory at Granite.

The defendant Dan Mara alone prosecutes this appeal and relies solely for reversal upon the proposition that the evidence as to him is insufficient to sustain the conviction.

The evidence is substantially as follows: Some time during the night of the 19th day of January, 1922, the storeroom of W. R. Jeffries, located in the town of Glenn Pool, Tulsa county, Okla., was broken into between closing time of that night and opening time of the following morning. Jeffries conducted a general merchandise store, in charge of his two sons Fred and Dave Jeffries. Among other things carried were groceries, dry goods, clothing, tobacco, and other things not necessary to mention.

On the night of January 19, 1922, the store was closed about 8 o'clock. Fred Jeffries locked the store securely. On the morning of the 20th of January, at about 8 o'clock, Dave Jeffries, the other son of W. R. Jeffries, went to the store to open it and discovered that the front door was partially open and that the store had been entered some time during the night. From the appearance of the front door it was evident that a crowbar or other heavy instrument of that kind had been used to pry the double doors apart so as to permit the latches to slip and the doors to open.

Upon entering the store and making an investigation, Dave Jeffries discovered that a large quantity of merchandise had been taken from the store. A detailed description of this property is unnecessary. Suffice it to say that it included dry goods, groceries, tobacco, and also an eight-piece set of aluminum which was carried on display.

Upon discovery of the burglary and larceny a private detective agency in the city of Tulsa was notified. The Jeffries at that time carried a membership in such detective agency and were entitled to the services thereof. Dave Jeffries publicly stated that he would give a reward for information leading to the arrest and apprehension of the guilty parties, and received some information from a young

lady who lived west of the town of Glenn Pool that led him to make the investigation which resulted in the arrest of these defendants and the recovery of a considerable quantity of the stolen property in the home of Earl Stanley on the afternoon of January 20, 1922, the day following the burglary, in the village of Stanleyville, which is about 8 miles west of the city of Sapulpa in Creek county, Okla., and about 20 miles from Glen Pool.

Just what this information was is not disclosed by the record, as the witness who gave it could not be located at the time of the trial.

After receiving the information, however, Dave Jeffries went to the town of Keifer, and together with Mr. Hicks, an officer, and Mr. Davis, a private citizen, went to the city of Sapulpa, where they procured a search warrant to search the premises of Earl Stanley. Armed with this search warrant, they arrived at Stanley's house about 4 o'clock that afternoon and knocked on the door and were told to come in. Stanley was not present, but the defendants Mara and Warren and a boy by the name of Stansberry were in the house. Mara was found wearing a red flannel shirt which Dave Jeffries identified as one of the shirts taken from the the Jeffries store on the night before. Warren was wearing a pair of blue overalls of the same brand and description of the kind taken from Jeffries store the night before and the paper brand was still on them. Stanley was also wearing a shirt which answered the description of some of the merchandise taken from said store. Besides the property found on the persons of these defendants, a search of the premises disclosed a large quantity of the stolen property, some of which was positively identified by marks and brands, the rest of which answered exactly the description of the prop-

erty taken and was of the same kind as that taken; but the entire quantity of property stolen was not found. That which was positively identified was commingled with that which Dave Jeffries was not able positively to identify except as to kind and general description. This property included piece goods concealed in two sacks and hidden under the bed, and handkerchiefs, shirts, embroidery, lace, buttons, gloves, tobacco, garters, ladies' hose, men's hose and other things too numerous to mention, which also included the eight-piece aluminum set and a 30 by 3 Goodrich automobile casing, which was identified by the number thereon.

Shortly after this property was found, Earl Stanley drove up in an automobile and was arrested together with the other parties, Mara, Warren, and Stansberry. When arrested Stanley was driving a car with a diamond tread casing, and a car with a diamond tread had been stopped in the street in front of Jeffries store on the night of the burglary, and evidently somebody had loaded some of the groceries into that car because some lima beans which had been stolen leaked out of the bag, forming a line from the store over to where the automobile with this casing had stood, and there the line of beans stopped. Some of the oil cloth which was stolen from Jeffries store was found in Stanley's car at the time of his arrest.

When the defendants Warren and Mara were questioned as to how they happened to be at Stanley's and as to where and how they came into possession of the property found there, some of which they were wearing, they remained silent and refused to say anything. Stanley said nothing until the officers began to take the property away, when he take property that did not belong with the property stolen. called their attention to the fact that they were about to

None of the defendants took the witness stand, neither did they introduce any other witnesses in their behalf.

The foregoing is a concise statement of the material evidence in the case. There were other numerous details which we deem it unnecessary to state and which we consider do not involve the merits of the question of the sufficiency of the evidence.

It is contended that the evidence as to Dan Mara is insufficient to connect him with the commission of the burglary, in that it only tends to show that on the afternoon following the burglary he was found in the house of Earl Stanley, his codefendant, with a shirt on which was of the same brand as some of the shirts taken from the store.

That is not the only evidence to connect Mara with the commission of this offense. True, he was found wearing a shirt which the evidence discloses beyond question was one of those stolen from the Jeffries store, but he was also at the same time found in Stanley's house exercising, in conjunction with his codefendant Warren, apparent domination and control over a large quantity of the other property stolen the night before from Jeffries store. Also when questioned he refused to make any statement as to how he happened to be at Stanley's house, or as to how he happened to be wearing the shirt or as to where he got it; nor did he say anything that would in any way tend to explain his possession of the stolen property in any manner consistent with his innocence.

That defendant's recent possession of property shown to have been stolen at the same time and from the same place of the alleged burglary is a circumstance which the jury may weigh and consider in connection with all the other

evidence and circumstances in the case is a well-established rule of evidence in burglary cases. 4 R. C. L. 440, § 34.

The presumption arising from the possession of stolen property is one of fact and not of law, and possession of property recently stolen, unexplained, is a circumstance to be considered and given such weight as the jury may see fit. Cox v. Territory, 2 Okla. Cr. 668, 104 Pac. 378; Cheeves v. State, 18 Okla. Cr. 480, 196 Pac. 726.

Mr. Bishop says:.

"When the fact of a theft has been shown, and the question is whether or not the defendant committed it, his possession of the stolen goods, either sole or joint with others, at a time not too long after the stealing, is a circumstance for the jury to consider and weigh in connection with the other evidence. Its significance will vary with its special facts, and with the other facts of the case, among which are the nearness or remoteness of the proven possession to the larceny, the nature of the thing as passing readily from hand to hand or not, what explanations he made on it being discovered that he had the goods, together with such other facts as ought reasonably to influence a juror's opinion. 2 Bish. New Cr. Proc. par. 740."

It was not necessary, in order to establish the defendant's guilt, that any of the witnesses should have seen him or his codefendants in the vicinity of the premises about the time the burglary was committed. It seldom happens that perpetrators of the offenses of burglary or larceny can be identified by witnesses who saw the act and recognized the defendants in the commission thereof. Resort, therefore, must ordinarily be had to circumstantial evidence in cases of this kind. The significance of the fact that a large quantity of this stolen property of all descriptions, from lard to a lady's garter, was found out there in the possession of the defendants at Earl Stanley's home, part of it upon this de-

fendant's person and part of it in Earl Stanley's automobile, and part of it scattered in different places around Stanley's residence, some up in the loft, some in the kitchen, and some under the bed in gunny sacks, are very significant circumstances pointing to the guilt of these parties, including this particular defendant. Another significant circumstance is the fact that the automobile in which Stanley was found riding the next day had a casing of diamond tread like the one whose track was discovered in front of the burglarized store, and the large quantity of property taken indicates that more than one person accomplished the burglary and larceny. The circumstance that this defendant, together with his codefendant Warren, were found in Stanley's residence in possession of this stolen goods when no one was at home, is also very significant. It is rather unusual to say the least. The fact that this defendant made no effort to explain his presence at Stanley's home or his possession of the shirt found upon his person is another significant circumstance.

The weight of all this evidence was for the jury. The province of this court is to determine whether or not there was a reasonable basis in the evidence for the jury to determine, as reasonable men, that the defendant was guilty of the crime charged. We think there was, and that the evidence is sufficient to sustain the verdict and judgment as against this defendant.

The judgment is affirmed.

BESSEY and DOYLE, JJ., concur.