C. S. BOX, Appellant,

v.

STATE of Oklahoma, Appellee.

No. A–17060.

Court of Criminal Appeals of Oklahoma.

Jan. 17, 1973.

Rehearing Denied Feb. 5, 1973.

Red Ivy, Chickasha, for appellant.

Larry Derryberry, Atty. Gen., Charles L. Pain, Asst. Atty. Gen., for appellee.

OPINION

BRETT, Judge:

Appellant, C. S. Box, hereinafter referred to as defendant, was convicted in the District Court of Grady County, Case No. CRF 70–64, of larceny of domestic animals, and sentenced to four years imprisonment. Judgment and sentence was imposed on May 10, 1971, and this appeal perfected therefrom.

The evidence established that 11 cattle were taken without the permission of the owner from the pasture of Lee Wade on the evening of December 22, 1969, or early morning of December 23, 1969. The 11 stolen cattle were all two to three year old heifers, and branded on the left hip with a Flying V Brand registered to Wade. The north gate to the pasture from which the cattle were taken had been forced open by the cutting of a chain, and from the gate cattle tracks led to a corral with a loading chute.

The evidence further established that on the early morning of December 23, 1969, the National Livestock Commission Company, which sells cattle on consignment, at the Oklahoma City Stockyards, received from the defendant 11 cattle. Four cattle were received for sale from C. S. Box at 1:00 A.M.; four cattle were received for sale in the name of Larry Box at 3:00 A.M.; and three cattle were received from C. S. Box at 4:50 A.M. Checks were drawn payable to C. S. Box and Larry Box, respectively, in payment for the cattle. The records of the company further showed that said cattle were sold on behalf of the defendant to Fisher & Company on December 23, 1969. An employee of Fisher & Company testified that the cattle were sold to Henry Hitch and Merle Leslie. Photographs of the cattle sold to Hitch and Leslie were identified by Lee Wade as the cattle stolen from his pasture. The Flying V Brand was visible on the cattle and identified as Wade's. It was further established, partly through the testimony of a handwriting expert, that the checks drawn on the National Livestock Commission Company were endorsed by the defendant and that it was defendant's writing on the "drive-in slips" or receipts made by the livestock company in receipt for the cattle received from defendant.

In defense, the defendant testified that Dwight McCarthy and Walter Adams, acquaintances of his son Larry, were at his home on December 22nd when he arrived after dark. According to the defendant, he, McCarthy and Adams left the Box residence for a place near where Lee Wade testified he had lost his cattle. At this location they found 12 cattle in a pen, which McCarthy said belonged to himself and his father. According to defendant, he offered McCarthy $1200 for the cattle, which offer was accepted. The cattle were then loaded up into the defendant's pickup in three separate loads. During one trip one cow got away and was lost. Defendant admitted signing and filling in the "drive-in slips," and endorsing the checks received from the National Livestock Commission Company. Thelma Box, defendant's wife, and Larry Box, defendant's son, testified

and corroborated defendant's story, claiming a sale by McCarthy of the cattle to the defendant.

In rebuttal, Walter Adams testified that on December 26, 1969, defendant asked Adams to help load some cattle that defendant had found. According to Adams, the defendant picked Adams up at 4:00 P. M., and then went with Dwight McCarthy to where the cattle were located. After darkness they returned to the location of the cattle, where, according to Adams, a gate was chopped open with an ax belonging to the defendant, and the cattle were driven through the gate, down a road to a corral and loading chute. According to Adams, 11 cattle were then transported to the Oklahoma City Stockyard in three separate trips. Adams testified that the defendant gave him and McCarthy each $340 for their participation.

It is defendant's first contention that the trial court erred in overruling defendant's demurrer, contending that the evidence was insufficient to support conviction. As defendant views the facts, the State merely established that Lee Wade lost 11 cattle, and that defendant sold 11 cattle. Defendant complains the evidence is insufficient in that no one testified as to the defendant being at the scene of the alleged theft.

■ We find defendant's contention in this regard to be wholly without merit. For the evidence to support a conviction, it is not necessary that there be any eye witness to the actual theft, or a witness who can place the defendant at the scene of the crime. In Cheeves v. State, 18 Okl.Cr. 480, 196 P. 726 (1921), this Court observed:

"In order to establish the defendant's guilt it was not necessary that any of the witnesses should have seen him or his codefendants in the vicinity of the premises about the time the larceny was committed. It rarely happens that perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must

therefore ordinarily be had to circumstantial evidence."

■ We find that the evidence presented by the State, if believed, sufficiently proved the State's position. It is the fundamental rule that where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility, and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence. Roberts v. State, Okl.Cr., 479 P.2d 623, 624 (1971).

It is defendant's second proposition that the closing argument of the prosecutor was prejudicial and denied defendant a fair and impartial trial. The language of the prosecutor which defendant challenges, reads as follows:

"If you want to throw the blame on the 18 year old boy that is fine and dandy. He deserves his part of the blame, and so does the other boy, but if these kids are guilty, he is guilty. They are not going to stand trial, I assure you, if that 41 year old man can go out here and get away with this, if you want rehabilitation, you better start early."

■ After this remark was made the defense counsel objected and made a motion for a mistrial, which was overruled. However, defense counsel made no motion that the jury be admonished to disregard the prosecutor's remark. It is a familiar rule of this Court that the defendant must not only object to improper statements of the prosecutor in his argument to the jury, but must go further and move the court to exclude such remarks from the jury's consideration, and instruct the jury not to consider said remark for any purpose, unless the remarks are of such character that the error could not be cured by a withdrawal of the remarks. Valenti v. State, Okl.Cr., 392 P.2d 59, 62 (1964). McMahan v. State, Okl.Cr., 354 P.2d 476 (1960). We find that this remark of the prosecutor was not so prejudicial as to deprive the defend-

**998**

ant of a fair trial, and therefore defense counsel's motion for a mistrial was properly overruled.

■ It is defendant's final proposition that there was an accumulation of irregularities which deny the defendant a fair trial. In this connection defendant lists some nine items. Except for one of these claimed irregularities, defendant cites no authority and offers little or no argument in support. In examining these items we find that no comment or explanation is required, other than to note the rule of this Court, that it is necessary for the defendant not only to assert error, but to support his contentions by both argument and citation of authority; and where this has not been done, and it is apparent that the defendant has been denied no fundamental rights, the Court will not search the books for authority to support mere assertions of error. Rule 1.7(c). Roberts v. State, Okl.Cr., 473 P.2d 264 (1970).

■ We do, however, consider the defendant's claim that the trial court improperly refused to allow defense counsel to impeach the rebuttal witness, and accomplice, Adams. We find no merit to this objection, particularly since the record indicates that the defense counsel cross-examined the Witness Adams and established that Adams had been convicted and given a suspended sentence in McClain County for "breaking and entering and stealing." The State's objection to defendant's furthering inquiry as to the exact disposition on such charge was sustained. However, defense counsel had ample opportunity to further cross-examine this witness and failed to do so. We find that the trial court did not deny defense counsel adequate opportunity to properly cross-examine the State's rebuttal witness.

Therefore, having considered defendant's contentions and finding them without merit, we conclude that the judgment and sentence should be and the same is hereby, affirmed.

BLISS, P. J., and BUSSEY, J., concur.