**Donald Ray STANLEY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. A–18051.**

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1973.

Joe B. McMillin, Jr., Weatherford, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen. and Kenneth L. Delashaw, Jr., Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

The appellant, Donald Ray Stanley, hereinafter referred to as defendant, was charged by Information in the District Court of Jackson County, with the crime

of Burglary Second Degree After Former Conviction of a Felony. Upon trial the jury returned a verdict of guilty of Burglary in the Second Degree. After the second stage of the proceedings, penalty was assessed at a term of twelve (12) years imprisonment. Formal judgment and sentence was pronounced on October 3, 1972, and the defendant has perfected his timely appeal therefrom.

The State called as its first witness, Joe Green, the owner of Green's Jewelry Store in Altus, Oklahoma. The witness testified that on the Saturday evening in question, April 8, 1972, he had placed all jewelry and watches of value in the store's safe and upon his return Sunday afternoon found the door of the safe had been pried off and all the contents therein taken. The witness further related that a back window had been broken and that he found tools, hammers, and crowbars lying on the floor. Mr. Green stated that he thereafter summoned the police and on the following day made an inventory of his losses. The witness identified State's Exhibit 2 as a watch similar to one missing from his store and positively identified State's Exhibits 3 through 11A as items being taken on the evening in question.

George Martin, a watch repairman at Green's Jewelry Store, identified the defendant as one of two individuals standing in front of the store approximately a week before the robbery. Mr. Martin stated that the defendant and the other man came in and he waited on them. The defendant had stated the two were interested in looking at wedding bands in the $2,000.00 price range. On cross-examination Mr. Martin testified that the watch identified as Exhibit 2 was dirty under the crystal and might have been worn for six months.

Mrs. Joe Green, wife of the owner, identified the defendant as the man she waited on at the watch repairman's request when she came back from lunch one afternoon, and stated that the defendant wanted to see a $2,000.00 diamond ring which he was interested in securing for his girl friend in Lawton. The witness conversed with the defendant and advised him that the store did not have a diamond that large in stock. She further related that the defendant appeared to be a laborer, and that he had a large roll of money protruding from his pocket. Mrs. Green corroborated her husband's identifications of the State's Exhibits.

The State's next witness, Fred Mathis, stated that at the time of the burglary in question that he was the manager of a motel in Altus. Mr. Mathis, testifying from the motel register, related that two men obtained lodging at his motel and that the two were driving a Buick automobile with Missouri tags. The witness could not positively identify the defendant as one of the men.

Hoyt Bell, a police officer from Clinton, Oklahoma, then identified State's Exhibit No. 2 as a watch he had taken from the defendant following the defendant's arrest.

Major Jerre De Vilbiss then stated that he was in the Air Force at Altus Air Force Base. He identified State's Exhibit 11 as an item he had purchased in Thailand for his wife. He further testified that he had taken the same to Green's Jewelry Store to have the ring repaired and that it had been taken in the robbery.

The State then called Mary Lou Wilson, who stated that she was originally from Poplar Bluff, Missouri, and that she had known the defendant, Donald Stanley. She stated that the defendant's girl friend, Kathy Bostick, was observed in Poplar Bluff by the witness prior to the time of the alleged burglary and that Miss Bostick had no rings, watches, or other jewelry on her person. The witness related that during the second week of April, she had seen Kathy Bostick and that the individual was wearing at that time a ladies wrist watch and diamond dinner ring. Under cross-examination the witness admitted that she was the common law wife of one Bill Sibole who was now in trouble, that she

would help him by testifying, that she had been a prostitute, and that she had paid her earnings to Bill Sibole.

Bill Sibole, an acquaintance of the defendant from Poplar Bluff, Missouri, then stated that he had seen the defendant around the first week of April at a beer tavern in Poplar Bluff, and that the defendant was not wearing a diamond ring at that time. Later, after the defendant advised the witness he had been to Louisiana for approximately a week and after the burglary, the witness observed the defendant was wearing two diamond rings. Sibole then described one of the two rings as being like one of the stolen rings.

The State's next witness, Sherrill Ann Conner, a resident of Dexter, Missouri, near Poplar Bluff, related that she had seen the defendant and two others on a Sunday during the first week of April. She related that she had been working in a restaurant when the trio came in, and that she gave one of the other two her trailer key. After work, the witness went to a movie and returned to find the three in her trailer with some diamond rings and one hundred or more watches. The witness stated that the diamond rings and other contraband were in drawers and envelopes and that the defendant, upon leaving shortly thereafter, took a dinner ring and watch with him. The witness further related that she turned the remainder of the jewelry over to the F. B. I. and another law enforcement officer. The witness then examined certain exhibits and stated they were some of the rings left in her trailer.

F. B. I. Agent William Burton of Poplar Bluff, Missouri, stated that in May he went to a house trailer in Dexter, Missouri, wherein the above witness resided with her roommate, Rosetta Wolpers. Agent Burton identified State's Exhibit 11 as a package of rings obtained from Rosetta Wolpers and further stated that he had taken the rings, sealed them in an evidence envelope and forwarded them to the F. B. I. in Oklahoma City. Agent David Buckley, an F. B. I. agent in Altus also identified the State's Exhibit 11 and traced the chain of possession to the prosecutor's office.

The State then called Sid Cookerly, an agent for the Oklahoma Bureau of Investigation. The witness related that he was in Poplar Bluff, Missouri, on April 20th conducting an undercover investigation by attempting to buy some jewelry. He stated that on April 22, 1972, he purchased some jewelry in Poplar Bluff in a motel room at a local motel. Present with him at the time were Jackson County Deputy Sheriff Bill Smith, Mary Lou Wilson and a woman who was introduced as Evelyn Caudel. He identified State's Exhibit 3 as a watch he had purchased there. Agent Cookerly further identified State's Exhibits 4 through 10 as items he had purchased on the day mentioned above and stated that all items were sealed in an evidence envelope after the purchase. Under cross-examination Cookerly admitted that the defendant was in no way connected with the sale.

Bill Smith, Jackson County Deputy Sheriff, related that he was in Poplar Bluff, Missouri, with Agent Cookerly and essentially corroborated the testimony given above. Deputy Smith also identified State's Exhibit 4 through 10 as being those items of jewelry purchased in Poplar Bluff, Missouri.

No further evidence was introduced by the State until the second stage of the proceedings were had. The defendant put on no testimony.

The defendant's first proposition in error contends that the trial court erred in admitting into evidence the watch obtained from the person of the defendant upon his arrest, the jewelry turned over to the F. B. I. by Sherrill Ann Conner and the jewelry purchased in Poplar Bluff subsequent to the burglary. The defendant then urges that since the evidence was improperly admitted the other evidence and testimony submitted in the case were not sufficient to sustain the verdict of guilty. By way of argument, the defendant in his brief states that the main question is the use of the

substantial amount of jewelry by the State in convicting the defendant, when the possession of said jewelry by the defendant could not be shown.

■ The watch obtained from the person of the defendant subsequent to his arrest was properly admitted into evidence. In Gresham v. State, Okl.Cr., 456 P.2d 119, this Court held, citing Gouard v. State, Okl.Cr., 335 P.2d 920, as follows, to-wit:

" 'Before physical object allegedly taken in commission of burglary is admitted in evidence, it must be sufficiently connected with the crime itself by proper identification. However, it is not necessary that such identification should positively and indisputably describe such article. If it is sufficiently described to justify its admission in evidence, the lack of positive identification goes to the weight of such evidence rather than its admissibility.' "

■ The evidence turned over to the F. B. I. was properly admitted since the defendant was adequately connected with its possession in the Sherrill Ann Conner trailer. When Miss Conner returned from work, she found the defendant and the other individuals in the trailer with a large amount of jewelry, including that portion turned over to the F. B. I. The defendant stayed awhile and then took a watch and diamond ring and left the premises.

The defendant cites numerous Oklahoma cases holding that a conviction based on the fact of possession cannot be based merely on constructive possession, citing Underhill v. State, 70 Okl.Cr. 39, 104 P.2d 447, and Cox v. Territory, 2 Okl.Cr. 668, 104 P. 378. It is true that the general rule is that an accused will not be presumed to have stolen articles which he does not know he possesses, i. e., stolen articles found on the premises where others have free access. However, in the instant case the defendant was placed in the trailer with the jewelry. He then took a portion of same and left. This is an obvious exercise of dominion and control. Brown v. State, Okl.Cr., 481 P.2d 475.

■ Therefore, considering all testimony and all real evidence introduced at the trial with the exception of the jewelry purchased by the undercover agent, there is sufficient circumstantial evidence for the case to have been properly submitted to the jury.

Concerning the jewelry purchased in Poplar Bluff, an examination of the record reflects that the State failed to connect the defendant in any manner with the sale or with Evelyn Caudel's possession of the jewelry. Under the circumstances, however, the error does not constitute reversible error, although justice would best be served if the sentence imposed were modified as set out hereinafter.

■ The defendant's last contention urges that the trial judge committed reversible error in instructing the jury on the law prior to both sides having formally rested. The defendant cites no cases on authority to support his contention and the record reflects that the defendant was not deprived of any fundamental rights. This Court has held many times that it will not search the books for authority to support mere assertions of error. McGee v. State, Okl.Cr., 402 P.2d 921. Therefore, defendant's last proposition in error is without merit.

For the reasons set out above, the judgment and sentence is, therefore modified to a term of ten (10) years imprisonment, and as so modified, the judgment and sentence is affirmed.

BRETT and BUSSEY, JJ., concur.