## CLYDE WEST v. STATE.

No. A-3692.    Opinion Filed Aug. 8, 1921.
(198 Pac. 99.)

(Syllabus.)

1.  **Larceny—Grand Larceny—Sufficiency of Evidence.**  Evidence examined and held sufficient to sustain a conviction.

2.     Same—Instructions—Issues — Intent — Trespass   as   Defense.
Where, in a prosecution for larceny of an automobile, the state's
evidence tended to establish guilt of the crime charged, and de-
fendant as a witness denied taking the car, there was no evidence
requiring the submission of any issue of variance between the
allegations and the proof.  Nor did defendant's evidence tend
to raise the issue of his guilt of a trespass under the special act
of the 1917 Legislature (Laws 1917, C. 149) providing against de-
facing, injuring, molesting, driving or attempting to drive any
automobile for joy-riding or any other purpose.   Defendant's
evidence in this case amounted only to a denial of the alleged
felonious taking of the property, and an attempted explanation
of his possession of it.  His evidence in no particular disclosed
a trespass against the property.

3.     Trial—Refusal of Instructions on Weight of Evidence.  It is not
error to refuse to give requested instructions which amount to
comments upon the weight of the evidence and are invasions of
the province of the jury.

4.     Witnesses—Impeachment—Contradictory Statements.  A witness
may not be impeached on any matter collateral to the matter in
issue with a view to eliciting from such witness an admission at
variance between former statements and those testified to on
the trial.  Where, however, the matter inquired about is relevant
to the issue in the cause, and the witness denies having made a
statement material thereto, such statement, if contradictory to
his testimony given on the trial, may be shown to impeach him.

Appeal from District Court, Rogers County; C. W. Mason,
Judge.

Clyde West was convicted of grand larceny, and appeals.
Affirmed.

W.H. Kornegay, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty.
Gen., for the State.

MATSON, J.   Plaintiff in error, Clyde West, hereinafter
referred to as defendant, was prosecuted in the district court
of Rogers county by information charging the larceny of an
automobile, the property of one Charles M. Seward.  A trial
to a jury resulted in a conviction, with punishment assessed at
imprisonment in the penitentiary for a period of one year.

It is first contended that the evidence is insufficient to sustain the conviction, and that the trial court erred in refusing to direct a verdict of acquittal.

Under this assignment of error contention is made that the evidence does not show that the car was taken by defendant with an intent to personally deprive the owner of it, and further that the evidence of defendant's good reputation for honesty is sufficient to overcome any presumption of fact that defendant was the thief arising from the possession of property recently stolen.

The uncontradicted evidence is to the effect that one Seward, who was the owner of a Ford touring car, parked the same in front of a hardware store on one of the business streets in the city of Claremore late in the evening of the 18th day of February, 1919. That after transacting some business the owner returned to the place where the car had been left and found that same had been taken without his knowledge or consent. Some two hours thereafter, defendant was found in possession of this car, stuck in a mud hole on a public highway about three miles north of the town of Busheyhead in said county.

Defendant had been in the city of Claremore that day, and had purchased a pair of shoes at a store there, giving in payment for same a check on a bank in the town of Chelsea.

When defendant was apprehended in possession of the car by officers from the town of Chelsea, defendant living near said town, defendant gave a fictitious name and claimed that he had come from the city of Tulsa in the car that day. After he was placed under arrest he was put in the back seat of the car and told to stay there until the officers got the car out of the mud hole. One of the officers went to the front of the car and started to crank it and defendant grabbed the pair of shoes he had with him and started to run. One of the

officers shot toward defendant two or three times and defendant dropped the shoes and escaped. The officers recovered the car and drove it back to Claremore.

The next morning defendant returned to the scene in order to recover his lost shoes, but failing to find them walked on to his home, a distance of six miles, and went to work sowing oats. He was apprehended and arrested that afternoon about 4 o'clock. After being taken to the jail, the owner of the car went up to the jail. He was a total stranger to defendant, but before he had said anything to defendant, defendant voluntarily remarked to him, "I didn't steal your car."

Defendant was first seen in possession of the car in the town of Busheyhead. At that time the car had been stopped near a lumber yard in said town and defendant accosted a young man and asked him if he knew where he could get some oil for the car and also some water. It was then very dark and the stores were closed, but the young man found some oil and got water for the car for defendant, and this young-man desiring to go to Chelsea got in the car and rode with defendant up to the place where he was afterwards apprehended. On the way up there, defendant drove the car at a very rapid speed, and remarked to this young man, "That's the way I drive my car when I've got my girl in it."

The identity of defendant was ascertained through tracing the purchase of the shoes in Claremore, the fact that defendant had given a check in payment for the shoes being the means of identifying and locating him.

Defendant as a witness in his own behalf attempted to explain his possession of the automobile, and testified that when he was leaving Claremore about 7:30 o'clock p. m., he was walking along the street towards the depot to take a train to Chelsea, and a white man who was a total stranger to him asked him where he was going, and he told this man that he was

going to Chelsea, and the man told him, "Well, I am going to drive up there in this car and you can go with me;" that he got in with this stranger and drove as far as Busheyhead when a car with bright headlights was seen coming in the opposite direction; that as soon as this car was seen the stranger got out and remarked that he was going up into the town of Busheyhead to get some oil for the car and left defendant with it. That defendant waited about thirty minutes, and the stranger not returning, defendant concluded he would get some oil for the car himself, and drive it on to Chelsea where he was known and leave it in a garage there, and that he was in the act of driving the car to Chelsea when he became stuck in the mud hole. Defendant also denied having any conversation with the young man concerning the car belonging to him (defendant), and about driving the car fast when he had his girl in it. Defendant also testified he had no recollection of having any conversation with Seward in which he denied stealing the car.

Some witnesses testified that defendant's previous reputation for honesty in the neighborhood in which he lived was good.

The foregoing is substantially the material evidence in the case.

The rule in this state is that the presumption arising from the possession of recently stolen property, to wit, that the possessor is the thief, is one of fact and not of law. If the possession is unexplained or is unsatisfactorily explained the evidence is sufficient to sustain a conviction for larceny; the inferences arising from such possession being for the jury to determine. Davis v. State, 7 Okla. Cr. 322, 123 Pac. 560.

In this case defendant attempted to explain his possession of the stolen car, but his explanation is wholly unsatisfactory

and clearly incredible.  An intelligent jury would hardly be expected to believe that a white man, who was a total stranger to defendant (a negro), would voluntarily accost him on a cold night in the middle of February and ask where he was going, and as a result another unusual, if not remarkable, circumstance was the peculiar coincidence that this white stranger happened to be destined for the same place that defendant was headed for.   Another very remarkable occurrence connected with defendant's possession of this car is the fact that after having stolen the car the white man would abandon it in the town of Busheyhead and never return, and it is equally unbelievable that after waiting thirty minutes for the white man to return that defendant would, if innocent, continue in the possession of the car, supply it with oil and water and continue on a journey toward his home without notifying a single person of his intentions, and again the fact that he told the young man who rode with him from Busheyhead to the mud hole that he got the car in Tulsa and intimated that it was his car, and also drove at a very rapid speed, are circumstances not consistent with innocence, and after his arrest the fact that he gave a fictitious name and again told the officers that he came from Tulsa, and attempted to escape, were all circumstances indicative of guilt, and the fact that on the next morning he returned to recover his shoes, the only link by which his identity could easily be ascertained, was another strong circumstance pointing to guilt.

We are of the opinion that the jury from all the facts and circumstances were authorized to conclude that the taking was felonious and that defendant was the thief.  Evidence of defendant's previous good reputation for honesty was properly admitted, and undoubtedly considered by the jury, especially we think in this case  in mitigation of the punishment, for the punishment assessed was imprisonment for a term of only one year, which is a very light sentence for the larceny of an auto-

mobile. While in some cases evidence of good character is sufficient to raise a reasonable doubt, and in a case where the evidence against the accused is weak and unsatisfactory, may result in a reversal of a conviction, we do not consider this such a case. In truth we believe the evidence here to clearly and unerringly establish the guilt of this defendant, and that if the jury made any mistake at all it was in not assessing a more severe penalty.

It is also contended that defendant, if guilty of any offense, was only guilty of a trespass, and should have been prosecuted under a special act of the 1917 Legislature providing against defacing, injuring, molesting or driving or attempting to drive any automobile for joy-riding or any other purpose.

It was clearly a question of fact as to whether the automobile was taken in the first instance with a felonious intent to deprive the owner thereof. If that was true the offense was larceny and not trespass, and as heretofore stated we think the evidence is amply sufficient to establish a felonious taking in this case. There is no evidence requiring the submission of any issue of variance between allegations and proof. Nothing in defendant's testimony disclosed guilt of a different offense, and the state's evidence proved larceny.

It is also contended that the court erred in refusing to give the following instruction:

"The explanation that has been offered in this case of the possession of the car and of how defendant was found in possession thereof is sufficient to overcome the presumption of guilt arising from the car being found in his possession."

This instruction was properly refused as it amounts to a comment upon the weight of the evidence and is a clear invasion of the province of the jury.

It is also contended that the court erred in refusing to charge the jury on the subject of the good character of defendant coupled with the other circumstances attached with defendant's possession of the automobile.

An examination of the instructions given discloses that the trial court gave a sufficient instruction on the subject of good character, and further the one requested on that subject was properly refused because it amounted to a comment upon the weight of the evidence and was also an invasion of the province of the jury.

The other assignments lodged against the instructions given are covered by what has heretofore been said concerning the sufficiency of the evidence.

It is also contended that the trial court erred in permitting the state on rebuttal to prove by the witness Seward that after defendant was arrested and in jail that he voluntarily stated to Seward, "I never stole your car."

We think this evidence was clearly admissible for purposes of impeachment. It was material to the issues in this: That defendant had denied any connection with the original taking of the automobile, and had attempted to explain his possession of it by testifying that he was accosted by a total stranger, a white man, and asked to ride, and that afterwards this white man deserted the car. The effect of defendant's testimony was, if believed, that he didn't know the owner of the car nor where it had been taken. On cross-examination defendant in effect denied any such conversation with Seward by claiming he did not remember. If defendant had seen Seward park his car in front of the hardware store, the inference would be that he knew Seward to be the probable owner of it, and if after his arrest he then recognized Seward and disclaimed having stolen the car without being informed that Seward was the owner of the car, such a statement was clearly con-

tradictory of defendant's testimony that he had no knowledge of the original taking of the car, and therefore contradictory of his testimony that he met up with a stranger who was driving a car.

The testimony of defendant, therefore, as we view it, made this evidence material and proper for purposes of impeachment. It is only in cases where the matters elicited on cross-examination as to contradictory statements are collateral that the party eliciting the same is bound by the answer. Where the subject-matter is material to the issue and a denial of the statement is made by the witness, the subsequent impeachment of the witness is allowable. Hartwell v. State, 15 Okla. Cr. 416, 177 Pac. 383.

Finding no substantial merit in any of the grounds urged for the reversal of this judgment of conviction, the same is affirmed.

DOYLE, P. J., and BESSEY, J., concur.