# B. D. CHESSER v. STATE.

No. A-9276.   Oct. 29, 1937.
(73 P. 2d 191.)

Guy Green and Donald, Kearby & Donald, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J.   This appeal is from a judgment of conviction rendered on the verdict of a jury finding B. D. Chesser guilty of the crime of larceny of domestic animals and fixing his punishment at 2 years' imprisonment in the state penitentiary.

The information under which the defendant was prosecuted in substance charged that the said B. D. Chesser and Henry Chesser, in Jefferson county on or about the 30th day of March, 1936, did take, steal, and carry away from the possession of E. J. Proctor, without his consent, one white-faced heifer yearling, one black Jersey heifer calf, one black and white heifer, one red bull calf, white spots on face, and one reddish Jersey bull calf, said livestock being then and there the property of said E. J. Proctor.

A severance was granted. Upon his separate trial the jury returned their verdict October 15, 1936.

The principal question in the case appears to be whether or not the evidence is legally sufficient to support the conviction.

The undisputed testimony offered by the state shows that E. J. Proctor, owner of said livestock, lived four miles west of Waurika, having moved there late in March, 1936, from a place about a mile west, leaving his livestock on the place he moved from. His cattle were marked with a cut out of the right ear V-shape. Monday evening he saw his livestock there in the barn lot; that the next morning five head of the cattle were missing. The stolen livestock were found in the defendant's possession eight miles east of Bowie, Tex., the ear marks had been changed, the right and left ears on each animal had been cut off, each branded "T," and the two bull calves had been castrated.

V. C. Estes testified that he lives five miles west of, and three to four miles south of, Waurika. On March 24 he sold a man three yearlings for $47, and received a check on the bank of Bowie, Tex., signed B. D. Chesser, the man said his name was Chesser and the man with him he called Shorty; that three or four days later Mr. Proctor lost his cattle; that he examined the tracks in the lot where Mr. Proctor's calves were loaded.

His cross-examination was in part as follows:

"Q. You mean to tell this jury you saw tracks there that hauled the cattle out of your place on March 24th is the same car that hauled Mr. Proctor's cattle away from his place? A. I don't know it is the same car, it did look like the same tracks, particularly the same tracks. Q. You stated to the jury and Mr. Eckler that the one that made the tracks at your place on March 24th, made the same kind of tracks at the cow lot of Mr. Proctor on March 30th? A. Looked like the same tracks."

Elvin Estes testified that he was present when his father sold three yearlings on the 24th day of March; that the man asked him whose cattle were across the fence from our cattle and he told him E. J. Proctor, and he asked where Proctor lived; that this was the man who bought his father's yearlings and he was driving a Ford V-8 pickup.

Charley Proctor testified that he lives six miles west of Waurika, had lived out there 29 years; that when he learned his son's cattle were missing he went after the sheriff; Mr. Goza could not go but sent Mr. Gardner; they found tracks coming in from the west and down to the barn where the cattle were loaded, then they followed the tracks to the main highway three miles this side of Ryan; that they found the cattle Friday, on Denton Branch creek, east of Bowie, Tex.; that Mr. Goza, Mr. Gardner, and Mr. Chandler, sheriff of Montague county, were there. Asked if the defendant made a statement there at that time, answered: "They asked him were those his cattle." He said, "Yes, sir"; asked him where he got them, he studied a little bit and finally said he bought them; asked him where he bought them at, he said he bought them on the highway between Decatur and Bowie; asked him whom he bought them from, he said he did not know; asked him who was with him and he said nobody; and asked him if he gave a check or cash and he said, "No, I never gave any check, I gave the cash, gave the money."

He further testified that the defendant said he cut the ears off the cattle and that he castrated one; that he did not know whether he did it that night or the next morning.

L. B. Gonza, sheriff of Jefferson county, testified

that he was called to Mr. Proctor's to look at some car tracks, and they found what he took to be a pickup track; that no one was living on the place then; that he tracked the car to the first lane going south, then through Mr. Stout's place, a mile to the south, there they turned in on old 81 highway; that they found the cattle in Montague county, Tex., five or six miles from Bowie, that the defendant came up and he asked him if he knew who he was; the defendant looked at Mr. Chandler and said, "I guess you are the law from Oklahoma"; he said, "Yes, sir, I am," and asked him about the calves; that he told him whatever he said might be used against him in court and he did not have to tell him unless he wanted to. The defendant said he bought the cattle out of a truck on the highway between Decatur and Bowie, that he had been to Fort Worth, selling some cattle and met this fellow on the road with a load of cattle, and bought five head from him; he asked him what he paid, he said "$35," he asked him if he gave a check and he said, "No," he gave him cash, and said he did not get a bill of sale; that he noticed the two bull calves had been worked on and he asked the defendant if he did that, and he said he did. He asked him if he marked the ears and he said he did.

He further testified that he looked at the car tracks where some cattle bought of Mr. Estes were loaded and they looked like the tracks in the Proctor barn lot.

He testified that he examined the place where the cattle were stolen from, found where they backed up the pickup and loaded the cattle, they let the end gate down on a big rock; the end gate had black paint, and this rock had black paint on it and showed to be off the end gate where the cattle trampled and left an impression where the paint came off the end gate on the rock; that he

checked Henry Chesser's car and the end gate was scratched.

Herman Chandler testified that he was sheriff of Montague county, Tex., knows the defendant, B. D. Chesser, had occasion to go to one of his pastures, eight and one-half miles east of Bowie, on Denton creek, to see about some cattle; that after they drove the five calves up the defendant came by. He said to him: "You have some calves here, Mr. Chester, claimed by this man." Defendant said, "I can explain how I came about with them," and said he bought them down close to Rhome, out of a truck. Rhome is between Bowie and Fort Worth, below Decatur. He said the man was driving a Dodge truck, but he did not get his name; that he paid him the money, $50 in cash; that Mr. Miner brought the cattle back and he came with them to the Proctor place where the cattle were taken; that when they were turned out three of the calves went to their mothers to suck.

Ellie Miller testified that he was deputy sheriff of Jefferson county; that he had occasion to go to Montague county, Tex., to look for Proctor's cattle; that they found them on Denton creek, northeast from Bowie; when they put them in the pen the defendant drove up; Mr. Chandler, sheriff of Montague county, asked him where he got the cattle; he said he got them off a truck on the highway between Bowie and Fort Worth; they asked him who did he get them from, he said, "I don't know, just a man in a truck," and they asked him whether he was a big fellow or a little fellow and he said, "I don't know"; they asked him, "Did you mark these calves?" and he said, "I did." They then asked him where the ears were and he said he did not know; they asked him if he had castrated any of them, he said, "I did"; they asked him where he was when he did that, and he said he did not know.

When the state rested its case, the defendant demurred to the evidence for the reason the evidence wholly fails to prove facts sufficient to show the defendant committed the crime charged against him, and moved the court to direct the jury to return a verdict of not guilty. The demurrer and motion were overruled. Exceptions allowed.

The defendant did not offer himself as a witness on his own behalf, but offered considerable evidence tending to prove an alibi.

Several witnesses testified that the defendant, B. D. Chesser, was at the stockyards at Fort Worth at 9:30 p. m. on March 30, 1936, and was in Fort Worth the next morning.

Several witnesses qualified as character witnesses and testified that the defendant's general reputation in the community where he lives as being a peaceful law-abiding citizen was good.

At the close of all the evidence the defendant again interposed a demurrer to the same and moved the court to direct the jury to return a verdict of not guilty, for the reason that the evidence is wholly insufficient to show that the defendant committed the crime charged against him.

Counsel for appellant contend that the court erred in overruling the demurrer and motion for directed verdict of not guilty, because the evidence was not sufficient to support a conviction, and in the brief state:

"The evidence wholly fails to place B. D. Chesser in 'juxtaposition' to have committed the crime of larceny, and it fails to connect him either directly or indirectly therewith, or that he aided or abetted in any manner in the commission of the offense, or that he knew that any property had been stolen, and, therefore, the fact that he

was found in possession of stolen property is not any proof of defendant's guilt, and especially in view of the fact that defendant explained to officers, when he was first questioned, that he purchased same from a man at a point in Texas, stating amount and conditions under which purchase was made, so as to absolve him from any connection with offense charged."

We have considered the record in its most favorable light to appellant, and we cannot agree with this contention. It is well-settled law in this state, if there is evidence to support the conviction, this court will not weigh the sufficiency of the same to sustain the verdict.

There is no dispute with regard to the ownership of the cattle, nor that they were stolen, and it is undisputed that the stolen cattle were in appellant's possession soon after they were stolen.

Evidence of possession by the defendant of the property stolen is always admissible as a circumstance tending to show the guilt of the accused. It has been uniformly held by this court that the possession of the property by the defendant soon after the commission of the alleged crime is merely an evidential fact tending to establish guilt which should be submitted to the jury, to be considered in connection with all the other facts and circumstances disclosed by the evidence.

In case of Davis v. State, 7 Okla. Cr. 322, 123 Pac. 560, 563, it is said:

"The possession of property, recently stolen, is evidence against the accused, which, like all other evidence, is to be taken and considered by the jury in connection with the other evidence in the case. Mr. Bishop says:

" 'When the fact of a theft has been shown, and the question is whether or not the defendant committed it, his possession of the stolen goods, either sole or joint with

others, at a time not too long after the stealing is a circumstance for the jury to consider and weigh in connection with the other evidence. Its significance will vary with its special facts, and with the other facts of the case, among which are the nearness or remoteness of the proven possession to the larceny, the nature of the thing as passing readily from hand to hand or not, what explanations he made on it being discovered that he had the goods, together with such other facts as ought reasonably to influence a juror's opinion.' 2 Bish. New Cr. Pro. par. 740.

"A question merely of fact is presented by the evidence, dependent wholly upon the credibility of the witnesses and the weight of their evidence. There could be no case suggested presenting a matter more proper for the decision of a jury. The jurors are the sole judges of the credibility of the witnesses who testify before them; and they are not bound to, nor can they be compelled to, credit the testimony of any witness, whether contradicted or not. When a jury returns a verdict of guilty in this character of a case, it indicates that the explanation of the defendant's possession, no matter how plausible, was not believed by the jury; and, unless, upon a fair consideration of all the facts and circumstances in evidence, it appears that the jury were not governed by the evidence in their finding, the verdict will not be disturbed on the ground of insufficiency of the evidence."

In Shields v. State, 32 Okla. Cr. 344, 240 Pac. 661, 665, this court said:

"The presumption arising from the possession of recently stolen property is one of fact and not of law. It is a circumstance for the jury to consider and weigh along with all the other evidence in the case. If the possession is unexplained, or if it is unsatisfactorily explained, or the explanation, even though plausible, is not believed, the jury will accord it such weight as they deem right and proper. They are the sole judge as to its weight, and when such fact with the other facts and circumstances in evidence, when given due weight, satisfy the jury be-

yond a reasonable doubt of defendant's guilt, it is sufficient to sustain the verdict. Slater v. U. S., 1 Okla. Cr. 275, 98 Pac. 110; Davis v. State, 7 Okla. Cr. 322, 123 Pac. 560; Gunter v. State, 16 Okla. Cr. 476, 184 Pac. 797; Cheeves v. State, 18 Okla. Cr. 480, 196 Pac. 726; [Spann v. State, 19 Okla. Cr. 9, 197 Pac. 531]; West v. State, 19 Okla. Cr. 355, 198 Pac. 99."

And see Hart v. State, 57 Okla. Cr. 372, 48 P. 2d 337; Jamison v. State, 59 Okla. Cr. 62, 56 P. 2d 905; Drew v. State, 61 Okla. Cr. 48, 65 P. 2d 549; McDonald v. State, 59 Okla. Cr. 318, 58 P. 2d 345; Maples v. State, 59 Okla. Cr. 324, 57 P. 2d 963.

It is a general rule that the defendant cannot give his own declarations in evidence, but this rule is otherwise if the statements are a part of the res gestae.

At the common law, when stolen goods were discovered in possession of a party recently after being stolen, what he said in explanation of his possession of the property immediately upon its discovery with him and before he had time to concoct a story is a part of the res gestæ, and admissible as such.

Mr. Bishop says:

"The discovery of the stolen goods in the possession of the defendant being a fact in the case, the doctrine of the res gestæ teaches that what he said in connection with this fact, particularly on its being made known to him, is admissible on either side, especially if then he is directly or by implication charged with the theft. If such explanation appears to the jury reasonable, and it is not shown by the prosecutor to be false, its weight in the scale for him will be very considerable; but if it appears unreasonable, or especially if it is shown to be false, it will bear against him heavily." 2 Bishop, New Crim. Proc. par. 746.

In the case of Cheeves v. State, 18 Okla. Cr. 480, 196 Pac. 726, this court held:

"In a prosecution for larceny, what the defendant said in explanation of his possession of a part of the stolen goods, immediately upon its discovery with him, is a part of the res gestæ, and as such admissible in evidence in his favor as well as adversely to him."

To the same effect is the holding in the following cases: Mitchell v. Territory, 7 Okla. 527, 54 Pac. 782; Smith v. Territory, 14 Okla. 518, 79 Pac. 214, 218.

What the defendant said at the time when found in possession of the stolen livestock, relating to and explanatory of his possession, was admissible in evidence in his favor as well as adversely to him.

Originally from the very nature of the case the fact of possession of property recently stolen is generally accompanied by other corroborative or explanatory circumstances of presumption. If the defendant secreted the property, if he cannot show how he became possessed of it, if he gave false, incredible or inconsistent accounts of the manner in which he acquired it, or that it had been sold to him by a stranger, if he has attempted to obliterate from the stolen property marks of identity, or ownership, these and all like circumstances are properly considered as throwing light upon and explaining the fact of possession, and render it morally certain that such possession can be referable only to a criminal origin, and cannot otherwise be rationally accounted for.

The defendant did not testify, nor deny any of the incriminatory testimony produced against him.

The evidence for the state as to appellant's explanation of his possession of the property, at the time of his arrest, was that he made some statements to the effect that he bought the livestock from a stranger on the highway between Bowie and Decatur, and paid $35 in cash

for the same; that he also stated that he bought the stock on the highway near Rhome, between Decatur and Fort Worth, and paid $50 for it. He also admitted that he had obliterated the ear crop marks of the owner by cutting off the ears of the livestock in question.

The truthfulness of an explanation of the possession of stolen property, although not contradicted, must be determined by the jury.

It rarely happens that perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must therefore ordinarily be had to circumstantial evidence.

Under all the circumstances we believe that the jury were justified in concluding that appellant was implicated in the original taking of the stolen livestock, and that the same were not purchased in good faith. In the opinion of this court, there was sufficient evidence to warrant the jury in returning a verdict of guilty, and, the jury being the tribunal upon which by our Constitution and laws is especially imposed the duty of weighing the testimony, and having so weighed the testimony and found against the defendant, it is not the province of this court to disturb their verdict.

It is also contended that the court erred in giving two certain instructions, and in refusing to give requested instructions.

No authorities are cited in support of the argument made. The instructions given by the court fairly submitted the law of the case. The court instructed the jury that, unless they believed beyond a reasonable doubt that the defendant, either acting alone or in conjunction with

another, stole the property in question, they should acquit, and that, when the fact of the theft had been shown, and the question was whether or not the defendant committed it, his possession, if they found, beyond a reasonable doubt, he had possession of the property alleged to have been stolen, at a time not too long after the stealing, is a circumstance for the jury to consider and weigh in connection with all the other facts and circumstances in the case. And the court correctly and fully instructed on the law of circumstantial evidence, and it was not error to refuse a more specific instruction in reference to the possession of property recently stolen.

Finally, it is contended that certain remarks of the county attorney in his opening and closing arguments before the jury in the case were improper and prejudicial.

It appears that in the opening argument he used the following language:

"They argue about the marks made by the automobile or truck in this case, gentlemen, if that was not so why didn't the defendant offer some testimony about that? By Mr. Donald: To which the defendant objects. The Court: Overruled, exception allowed. He didn't know where he bought them or who he bought them from, or what he paid for them down there east of Bowie. Ellie Miller testified to you, when the defendant was talking about these cattle, he did not know about these calves, what he knows, gentlemen, won't help him in this case, why did he make that statement at that time. Why couldn't they contradict the state's testimony, but not one place do they do that, if this defendant is innocent in this case why, I will ask you again, why did he make the statement to the officers that he made at that time out there, each and every one in the court listening to what they had to say, they try to show prejudice on the part of the sheriff in testifying in this case. That is his home, we subpoenaed him up here and he had the right to come up here and testify in this case or anywhere else."

And used the following language in his closing argument:

"Where did the defendant get possession of those cattle, did he just happen to get them, did that just happened, and not up to this time has there been one single iota of evidence, other than his character witnesses. Why didn't they have Rice Russell testify to his good character. He did not say what the officers said wasn't so, not one word at any time. Why didn't they use the other boy that rode up in the truck. Why they wouldn't get on this stand and dispute or contradict the evidence of Mr. Proctor and his father, the evidence testified to by them in regard to the defendant's statements at that time. Read the instructions given you by the court as to possession of recently stolen property, there is not one bit of evidence to deny this. The defendant offered no proof whatsoever. That is, you should demand an explanation, no explanation given of that by the defendant whatsoever. I ask you to read instruction No. 7. In these instructions, when you get to your jury room, there is no evidence insinuating he is not guilty. Mr. Donald: That is objected to by the defendant as placing the burden upon the defendant. The Court: They won't take his statement. Mr. Eckler: Disregard that gentlemen, if you don't find that in the evidence and in the instruction offered. And I say again there is no evidence offered to contradict the state's evidence in this case."

The record does not contain the arguments of counsel except the above excerpts.

Our Code, § 3068 (22 Okla. St. Ann. § 701), is the section which permits one who is accused of crime to waive his privilege of standing mute and allows him to testify as a witness in his own behalf. The section concludes with this language:

"The person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption

against him nor be mentioned on the trial; if commented upon by counsel it shall be ground for a new trial."

It is contended that the statement of the county attorney was equivalent to saying that the defendant had failed to take the stand to testify in his own behalf.

We cannot agree with counsel's contention in this respect. Fairly interpreted, it was an assertion that there had been no evidence controverting that presented by the state. It was in effect a comment on the fact that testimony of witnesses for the state had not been contradicted.

In McDonald v. State, 59 Okla. Cr. 318, 58 P. 2d 345, it is held:

"Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel."

In Kennamer v. State, 59 Okla. Cr. 146, 57 P. 2d 646, 665, it is said:

"The sole object of all argument is the elucidation of of the truth, greatly aided in matters of fact as well as in matters of law by full and fair forensic discussion. Argument may violate ethics and not violate law. It may be improper, but not illegal. Improper remarks by the prosecuting attorney in the argument do not require a reversal, where they appear to be strictly in reply to allusions of counsel for the defendant."

In the case of Miller v. Com., 153 Va. 890, 149 S. E. 459, 68 A. L. R. 1102, the Virginia Supreme Court of Appeals held:

"A statement made in argument by the prosecuting attorney, that no witness has gone upon the stand to

deny statements which certain witnesses testified to have been made to them by accused, is not within the inhibition of a statute permitting one accused of crime to testify as a witness on his own behalf, but providing that his failure to testify shall not be the subject of comment by the prosecuting attorney."

In People v. Donahoe, 198 Ill. App. 1, affirmed in 279 Ill. 411, 117 N. E. 105, it is held that the state's attorney in a criminal case may properly comment on the fact that the testimony of witnesses for the prosecution has not been contradicted, even though the defendant alone was in a position to contradict or dispute such testimony.

In McDonald v. State, supra, we said:

"The statute, section 3068, supra, is comprehensive in the extreme and this court will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witnesses in his behalf. This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the state's evidence by proof other than that which might be given by the defendant personally. Murrell v. State, 34 Okla. Cr. 413, 246 Pac. 644; McDaniel v. State, 35 Okla. Cr. 425, 250 Page 804; Soper v. State, 22 Okla. Cr. 27, 208 Pac. 1044."

It is our opinion that the country attorney did not exceed his privilege.

Upon a consideration of the entire record, we find no injustice done to the defendant and nothing that would warrant us in disturbing the verdict.

The judgment appealed from is accordingly affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.