O. E. ALLEN et al. v. STATE.

No. A-9932. April 8, 1942.

(124 P. 2d 737.)

R. N. Linville, of Elk City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen and Sam H. Lattimore, Asst. Attys. Gen., for defendant in error.

JONES, J. The defendants, O. E. Allen and Dalton Sharum, were charged in the district court of Roger Mills county with the crime of larceny of domestic animals, were tried to a jury, convicted, defendant Dalton Sharum was sentenced to three years in the State Penitentiary; the jury was unable to agree upon the punishment to be assessed O. E. Allen and he was sentenced to serve a term of five years in the State Penitentiary. Both defendants have perfected their appeal to this court.

Counsel for defendants have presented many assignments of error, which will be disposed of in the order of their presentation in defendants' brief.

It is first contended that the evidence is insufficient to sustain the conviction.

The evidence on behalf of the state is substantially as follows:

The two defendants brought the three cattle in question to the Dempsey Wright Livestock Commission Company at Oklahoma City early in the morning of July 18, 1939. The defendant Sharum represented himself as the owner of the cattle and gave his name as C. D. Bell of Foss in Washita county. The cattle were hauled in a trailer behind defendant Allen's automobile and had each been freshly branded over the old brand used by W. F. Wickham, the owner of Wickham's ranch in Roger Mills county.

The employees of the Livestock Commission Company became suspicious because of the defendants' actions and the fact that the cattle were freshly branded in the middle of the summer, conveyed their suspicions to the sheriff's office and the two defendants were arrested at the stockyards. Deputy Sheriff Pierce testified to a conversation had with defendant Allen as follows:

"Q. (By Carl A. Beavin, County Attorney) Mr. Pierce, did you have any conversation with Mr. O. E. Allen regarding the three steers. A. Yes sir, I asked him if they were his and he said they were,—I asked him if he had title to them, if he could prove title and he said that was for us to do,—I asked him where he bought them, he didn't know,—I then asked him why he would brand this time of year,—why he would brand steers that time of year, with so many flies and he replied that he had some cattle lost in the stockyards one time and he wasn't taking any more chances,—I asked him where he had branded them and he said, 'Along the road', and then I asked him, I told him, 'If you will give us an idea, if you will tell us where you got these steers, we don't want to put an innocent man in jail and if you will give us some place where we can check up and find your story is true we'll apologize to you and turn you loose.' And he says, 'No, you have got me, now find out where the

steers belong, if you can.' Q. Now, do you remember whether or not you had any further conversation with Mr. O. E. Allen? A. I think that's all,—I set in then to find the owner of the steers."

The defendant Sharum first stated his name was C. D. Bell, but later admitted his correct name.

W. F. Wickham testified that he happened to be in Oklahoma City the 18th, 19th, and 20th of July, 1939, purchasing some cattle for his packing plant at Sapulpa. He saw the cattle in the stockyards and identified them. He had purchased the steers in the fall of 1938 and sent them to his ranch in Roger Mills county. He had seen the cattle frequently since that time and was positive in his identification. His brand was "11." When he saw these cattle at Oklahoma City they had been freshly branded over his old brand. The cattle were taken from his ranch without his knowledge or consent and against his will.

The proof further showed that the defendant O. E. Allen lived on a ranch adjoining the Wickham ranch. The defendant Sharum worked for Allen.

Harold Brinkley, a witness for the state, testified that Allen came to his place at Elk City in the middle of July, 1939, and asked him if he knew where he could get a trailer. That, at the request of Allen, he called Porter Jacobs to see whether he would rent a trailer to Allen. That Jacobs brought a trailer to his place of business that evening and the next morning it was gone.

Porter Jacobs testified that he sent a trailer about 5 or 5:30 p. m., in the middle of July, 1939, to Brinkley's garage. The next time he saw the trailer was in the court yard a week or ten days later.

The proof on behalf of the defendants was to the effect that they had been hired by Ralph Small, the fore-

man for Wickham's ranch, to haul the cattle to Oklahoma City and were to be paid 65 cents per hundred for their hauling. Allen said the name C. D. Bell was used under the instructions of Ralph Small and that the cattle were branded when he saw them in his yard. That he had hauled cattle for Red Small to the city before. He further stated that he had been convicted and served terms in the State Penitentiary twice for larceny of domestic animals.

Defendant Sharum testified that he had been living at Allen's place for two or three years. That he was working for Allen and went to Oklahoma City with him to haul the cattle. They left the Allen farm about dark and arrived in Oklahoma City the next morning. That he gave the name of C. D. Bell because he had been told to do that. That he had been to the commission house before and had sold cattle in the name of Bell. That he did this at the direction of Mr. Small. This witness was 22 years old and admitted serving a term in the penitentiary for larceny of an automobile.

Other witnesses for the defendant testified that Ralph Small had brought some cattle and left them at Allen's place. One witness said it was in June and another in July of 1939. There were many witnesses who testified as to the good and bad reputation of the defendant Allen.

In rebuttal, Ralph Small, the foreman of Wickham's ranch, denied all of the things which were attributed to him by the defendants and their witnesses in connection with the stolen cattle.

It has been repeatedly held by this court that the possession of property recently stolen is evidence against the defendant and when the fact of a theft has been shown and the question is whether or not the defendant committed it, his possession of the stolen goods, either

sole or joint with others, at a time not too long after the stealing, is a circumstance to be submitted to the jury for their consideration. Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191; Davis v. State, 7 Okla. Cr. 322, 123 P. 560; Shields v. State, 32 Okla. Cr. 344, 240 P. 661, 665.

In Shields v. State, supra, it is stated:

"The presumption arising from the possession of recently stolen property is one of fact and not of law. It is a circumstance for the jury to consider and weigh along with all the other evidence in the case. If the possession is unexplained, or if it is unsatisfactorily explained, or the explanation, even though plausible, is not believed, the jury will accord it such weight as they deem right and proper. They are the sole judge as to its weight, and when such fact with the other facts and circumstances in evidence, when given due weight, satisfy the jury beyond a reasonable doubt of defendant's guilt, it is sufficient to sustain the verdict. Slater v. United States, 1 Okla. Cr. 275, 98 P. 110; Davis v. State, 7 Okla. Cr. 322, 123 P. 560; Gunter v. State, 16 Okla. Cr. 476, 184 P. 797; Cheeves v. State, 18 Okla. Cr. 480, 196 P. 726; West v. State, 19 Okla. Cr. 355, 198 P. 99."

In Chesser v. State, supra [63 Okla. Cr. 84, 73 P. 2d 195], the court stated:

"Originally from the very nature of the case the fact of possession of property recently stolen is generally accompanied by other corroborative or explanatory circumstances of presumption. If the defendant secreted the property, if he cannot show how he became possessed of it, if he gave false, incredible or inconsistent accounts of the manner in which he acquired it, or that it had been sold to him by a stranger, if he has attempted to obliterate from the stolen property marks of identity, or ownership, these and all like circumstances are properly considered as throwing light upon and explaining the fact of possession, and render it morally certain that

such possession can be referable only to a criminal origin, and cannot otherwise be rationally accounted for."

The proof of the state, when weighed in the light of these authorities, abundantly supports the conviction.

It is next contended that the court committed error in excluding certain evidence offered by the defendants. This objection is based partly upon the refusal of the court to permit the introduction of a statement alleged to have been made by the defendant Allen to the officers while he was in their custody at the jail in Oklahoma City. This statement was rejected by the court because it was a self-serving declaration, and we think this ruling of the court was proper.

It is further urged in this connection that the court erred in not permitting the defendant Sharum to relate a conversation had with Wickham in which Wickham told him that if he would turn state's evidence he would use his influence to get him as light a sentence as possible and would employ him on his ranch at $2 per day for his services, and that in that conversation Sharum told Wickham that he did not steal the cattle and if they were stolen he knew nothing about it. We think the court ruled properly in excluding this evidence, as it is unquestionably incompetent.

There were complaints made of the rejection or admission of other evidence, but the defendants' chief complaint is directed to the two instances above related. However, we have examined the other evidence complained of and have found no commission of substantial error in any of the rulings of the court on the admission or rejection of evidence.

The next assignment of error is that the court committed error in the giving of instruction No. 12, which reads as follows:

"You are instructed that if you find and believe from the evidence beyond a reasonable doubt that the defendants did, in this county and state, on or about the date charged in the information, take, steal and carry away, from and out of the possession of the owner thereof, the three steers described in the information, or if you so find that they aided and abetted another person in so doing, with the unlawful, wilful and felonious intent to deprive the owner thereof and to convert the said steers to their own use and benefit or to the use and benefit of such other person as charged in the information, then you will return a verdict of guilty as charged in the information, and unless you so find and believe from the evidence beyond a reasonable doubt, you will find the defendants not guilty."

The defendants contend that the information does not charge that they aided and abetted another person in stealing the cattle, but the state proceeded upon the theory that the defendants had stolen the cattle without the aid or assistance of any other person; that, on the other hand, the defendants claim that they were entirely innocent of the commission of any crime and that any larceny must necessarily have been committed by Ralph Small, who they contend drove the cattle to the place of the defendant Allen and left them there to be hauled to Oklahoma City and sold by Allen.

Defendants argue that this instruction was an invitation by the court to say to the jury that Ralph Small brought the cattle to Allen's ranch, as the proof of the defendants showed, that defendants knew the cattle had been stolen from Wickham's ranch and agreed to take them to Oklahoma City and are therefore guilty.

In another instruction (No. 7) the court clearly explained to the jury the theory of the defendants' case. There can be no complaint about instruction No. 7, as it fairly details defendants' theory and instructs the jury that if the circumstances related by the defendants were

true, they would be guilty of no crime, and that after considering this evidence, together with all the other evidence in the case, if they had a reasonable doubt of the defendants' guilt, it was their duty to acquit them.

It is not necessary for an information to charge a person with aiding or assisting another in the commission of a crime where two or more persons are involved. Section 1808, O. S. 1931, O. S. 1941, Tit. 21, § 172, provides:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

In construing this section it has been held that a defendant may be convicted whether the evidence establishes that he actually perpetrated the crime or merely aided or abetted its commission. Bundy v. State, 16 Okla. Cr. 481, 184 P. 795; Radke v. State, 17 Okla. Cr. 230, 187 P. 500; Longshore v. State, 27 Okla. Cr. 128, 225 P. 573.

We do not think instruction No. 12 is confusing, but is a correct statement of the law. If the jury believed that Ralph Small had stolen the cattle from Wickham under a plan with the defendants to bring them to Allen's place and be hauled to the city, the defendants would still be guilty of the crime charged in the information. Instruction No. 7 tells the jury that the defendants would be guilty of no crime if they received the cattle from Small and hauled them to the city in good faith and without knowing that they were stolen.

We have examined all of the instructions, and when considered as a whole they fairly and clearly advise the jury as to the law applicable to the evidence which was introduced. If the jury had believed the testimony of

the defendants they would have been acquitted. There were too many damaging facts for the defendants to explain, and it is not hard for this court to see why the jury refused to accept the defendants' explanation and returned a verdict of guilty.

Some complaint is made of the closing argument of the special prosecutor. The record does not contain the argument of the special prosecutor, but at the close of all the arguments, counsel for defendants dictated an objection into the record as to certain statements which he alleged the prosecutor made in his argument. If an improper statement was made by counsel in his argument, the same should have been properly preserved at the time it was made.

Later, an affidavit of the defendants was attached to the motion for new trial in which they state that they heard certain remarks made by the special prosecutor in his closing argument. However, the evidence upon this controverted point which was introduced in the hearing on the motion for new trial is also not included in the record. There is in the record the statement of the trial court specifically finding that the prosecutor did not make the statements about which complaint was made. In the absence of a record of the remarks made by counsel and the further absence of a record on the evidence introduced upon this question, we feel bound by the judgment of the trial court on this point.

After considering the record as a whole, it is our conclusion that the defendant has had a fair and impartial trial and that there has been no substantial error committed.

The judgment of the district court of Roger Mills county is affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.