## PAUL SELLERS v. STATE.

No. A-10928.   Nov. 24, 1948.
(200 P. 2d 444.)

Turner M. King and Carloss Wadlington, both of Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J. Plaintiff in error, Paul Sellers, defendant below, was charged, tried, convicted by a jury, and sentenced to serve two years in the penitentiary for the crime of second degree burglary, allegedly committed on November 28, 1946.

The jury based its verdict upon a state of facts as briefly hereinafter set forth. The record discloses that George Weeks was doing some work at his filling station on a Lobaugh trailer and truck for Mr. Kingery, who was in possession of the truck, by virtue of a lease from Mr. H. L. Stone, the owner. In effecting the repairs, it was necessary that he remove two of the rims, tires and tubes from the wheel, the tires being 9.00 x 15, an exceptionally odd size. The evidence adduced at the trial established the tires, tubes and rims were worth approximately $200. The evidence discloses, shortly before Mr. Weeks closed up his establishment, defendant, Paul Sellers, and Billy Joe Adams were seen in the filling station and in the room where the said tires were

then stored. The next morning the tires were gone. A closed window in the filling station had been raised and fresh mud was deposited on the window sill. The filling station was otherwise closed and locked up. A search was made for the tires and they were later found hidden under some hay in a barn back of residence where Paul Sellers had formerly resided. The tires were identified by George Weeks and Mr. H. L. Stone, the owner, and returned to the latter. Billy Joe Adams testified for the state and corroborated other witnesses for the state to the effect that he and Paul Sellers had been in the filling station prior to the time it was closed on the day in question. He further testified that he was not in the filling station after it was closed for the night. He said, thereafter and about 7 or 7:30 p.m., while he was in Ray Lloyd Benton's place adjoining the filling station, the defendant, Paul Sellers, asked him to load some tires in a car in possession of the defendant, Sellers, and which Sellers had parked nearby. He identified the tires that he helped load as being two 9.00 x 15 truck tires together with tubes and rims. He said he helped load the tires and he and Sellers took them to a barn located at Portland Park back of the house where Sellers formerly lived. Upon arrival at this place he said he and Sellers unloaded the tires and hid them in the barn under the hay. He positively denied that he had entered the filling station after the same was closed on the night in question. Moreover, he testified he did not know where Sellers got the tires, but stated positively that Sellers said he got them out of the filling station. Other evidence offered by the state through other witnesses corroborated the testimony of Billy Joe Adams to the effect that Paul Sellers was driving his brother's automo-

bile the night in question. This evidence disclosed that there were three smooth tires and one good tire on the Sellers' automobile. The tire tracks at the barn where the tires were unloaded corroborated Billy Joe Adams' testimony to the effect that this car was used. The state's witnesses testified that the automobile used to transport the tires to the barn was one that had three smooth tires and one good tire on it. Other corroborative evidence was to the effect that the stolen tires and rims had been unloaded in the mud near the barn and in dropping them to the ground one of them had left an impression in the mud, leaving a truck tire mark of Firestone imprinted in the mud. This mark left in the mud corresponded with the Firestone mark on the truck tire found under the hay in the barn. Moreover, this evidence established that Paul Sellers and Billy Joe Adams were seen together at Ray Lloyd Benton's place the night of the burglary adjacent to the filling station. To this evidence the court correctly overruled defendant's demurrer.

On this state of the record defendant contends that Billy Joe Adams was an accomplice, and that the evidence is insufficient for the reason that Billy Joe Adams' testimony was not corroborated. With this contention we cannot agree. The reason is apparent upon the face of the record. The defendant alone was charged with the burglary of the filling station wherein the tires were stored. There is not one line of evidence in the record which reveals that Billy Joe Adams was in any way involved in the burglary, that is, the breaking and entering as defined in Title 21 O.S. 1941 § 1435, the essential element to a burglary conviction. The record does disclose that after the burglary had been committed apparently by raising a window and thereby gaining entrance into the filling station, the defendant, Paul Sellers, asked

Billy Joe Adams to help him load the tires; that upon being asked so to do Billy Joe Adams then assisted in disposing of the stolen tires, tubes and rims. The record discloses that Billy Joe Adams testified that the defendant, Paul Sellers, told him he got the tires out of the filling station. This evidence stands uncontradicted or unexplained by the defendant. The record establishes the act of burglary was completed without his knowledge and before Billy Joe Adams participated in the disposal of the property. Admittedly, the evidence discloses that he admitted only that he thought the tires were stolen when he participated in the asportation of them from outside of the filling station to the barn where he and Paul Sellers hid them under the hay. Since the witness Billy Joe Adams is not charged jointly in this action with Paul Sellers, it is not necessary for us to pass upon his liability in this case or to surmise upon which of the bases he might be charged because of his participation in the asportation of the tires after the burglary had been committed. This is not an issue herein. Our conclusion in this regard is sustained by the case of Lasley v. State, 46 Okla. Cr. 179, 287 P. 1055, wherein this court under a similar circumstance held:

"In a prosecution for larceny a person who was not present and did not participate in the taking or asportation of the property stolen nor aid and abet therein but who subsequent thereto with guilty knowledge that it was stolen property, aided in the disposition and concealment of same by transporting it into another county is not an accomplice of the thief."

This authority is therefore decisive of the issue as to Billy Joe Adams being an accomplice to the burglary such as to require corroboration. Billy Joe Adams therefore not being an accomplice, his testimony required no corroboration and standing alone is sufficient to make out

a prima facie case. See Smith v. State, 62 Okla. Cr. 33, 69 P. 2d 671, 672:

"The term 'prima facie evidence' as used in the statute is that degree of proof, which unexplained or uncontradicted is alone sufficient to establish the unlawful intent if it be credited by the jury."

Except for the admission that Paul Sellers made to Billy Joe Adams as to where he obtained the tires, the evidence is circumstantial but it is nevertheless sufficient upon which to sustain this conviction, as was said in James v. State, 66 Okla. Cr. 462, 92 P. 2d 973:

"One may be convicted of burglary upon circumstantial evidence, the same as upon direct evidence."

See, also, Chesser v. State, 63 Okla. Cr. 84, 85, 73 P. 2d 191.

Moreover, the evidence of Billy Joe Adams as to the admission of Paul Sellers, to the effect that he got the tires out of the filling station, standing alone and undenied by the defendant, together with the other circumstances revealed by the evidence, was a fact to be determined by the jury and which within their province they resolved against the defendant. In this conclusion we are supported by James v. State, supra, wherein this court said:

"The finding of recently stolen property in the possession of a defendant is a circumstance to be taken into consideration by the jury, together with the other facts and circumstances in the case."

See, also, Highfill v. State, 73 Okla. Cr. 93, 118 P. 2d 263, wherein this court said:

"The mere possession of property recently stolen is not sufficient to convict the possessor of larceny or burglary of it. But when this possession is unexplained and

is supplemented with other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to pass upon the guilt or innocence of the defendant."

Under the law the jury resolved these issues against the defendant and therefore his contention that the evidence is insufficient upon which to support a conviction is without merit.

Next, the defendant contends that the county attorney committed reversible error in arguing the case to the jury. This contention is predicated upon the proposition that in his argument the county attorney said:

"That the possession of recently stolen property is a circumstance of guilt and insofar as there being any explanation as to that, the record is as silent as a tomb."

The defendant argues that said remarks of the county attorney constitute reversible error in that said statement amounted to comments upon the defendant's failure to take the witness stand. In support of this contention defendant relies upon the following cases: Shepherd v. State, 77 Okla. Cr. 131, 139 P. 2d 605; Sturgis v. State, 2 Okla. Cr. 362, 102 P. 57; Brown v. State, 3 Okla. Cr. 442, 106 P. 808; Weinberger v. State, 8 Okla. Cr. 441, 128 P. 160; Zedda v. State, 30 Okla. Cr. 348, 235 P. 939; Kinder v. State, 48 Okla. Cr. 124, 289 P. 796; Shelton v. State, 49 Okla. Cr. 430, 295 P. 240; Bell v. State, 55 Okla. Cr. 439, 32 P. 2d 747; Davis v. State, 65 Okla. Cr. 306, 86 P. 2d 65; Rice v. State, 66 Okla. Cr. 434, 92 P. 2d 857. The foregoing cases will support the proposition that it is error to comment upon the defendant's failure to testify as a witness in his own behalf, but such is not the situation involved in the case at bar. The case at bar is covered by the rule announced in Presnell v. State, 71 Okla. Cr. 162, 109 P. 2d 834, 835, wherein this court said:

"The statement by the county attorney in his argument to the jury that, 'The witness, Deehan, who is now deceased, in his testimony identified this defendant, and that has not been denied or contradicted by any one in this case," held not a comment upon the failure of the defendant to testify as a witness on his own behalf, within the meaning of Sec. 3068, O.S. 1931, 22 Okla. St. Ann. § 701."

In Chesser v. State, supra, this court said [63 Okla. Cr. 84, 73 P. 2d 192]:

"Statements of the prosecuting attorney, in argument to the jury, 'Why couldn't they contradict the state's testimony, but not one place do they do that,' and 'I say again there is no evidence offered to contradict the state's evidence in this case,' held, not a comment upon the failure of the defendant to testify as a witness in his own behalf, within the meaning of section 3068, St. 1931 (22 Okla. St. Ann. § 701)."

See Parker v. State, 34 Okla. Cr. 254, 246 P. 493, and Murrell v. State, 34 Okla. Cr. 413, 246 P. 644, wherein the county attorney in his argument said:

" 'The officers testified that the defendant stated at the time of his arrest, "You know that ain't my whisky"; it hasn't been denied.' "

And the court held that such a statement was not within the provisions of Title 22 O.S. 1941, § 701, providing, in substance, that the defendant's failure to testify in his own behalf shall not create any presumption against him nor be mentioned on the trial and that if the same is mentioned shall be grounds for a new trial. In view of these authorities, we, therefore conclude that the remarks of the county attorney were not erroneous but constituted legitimate comment upon the state of the record, and cannot be regarded as comment upon the defendant's failure to testify in his own behalf.

Finally, defendant complains that the court erred in giving oral instructions in addition to his written instructions as revealed by the proceedings hereinafter set forth. The record discloses that the foreman stated to the court:

"By the Foreman of the Jury: If the court will tell us a little more about what common sense is we might be able to arrive at a verdict."

And thereafter the following proceedings were had thereupon:

"By the Court: Is that in the instructions? By the Foreman: No, in the trial. By the Court: I don't know, Mr. Wright, just what you have reference to there or whether you are discussing the force of these instructions here, or not and in rereading one of these instructions I want to say that in reading these instructions, or in discussing any of the instruction, you fellows in deciding this case are not to take any one instruction without considering them as a whole. By Mr. King: We want to interpose an objection to all comment that is being made by the jury to the court at this time. By the Court: All right. By Mr. King: And to any comment of the court. By the Court: All right, let the record so show. I am going to reread one of these instructions:"

Thereupon the court proceeded to reread instruction No. 11:

" 'You are the sole judges of the facts proven in this case and of the credibility of the witnesses who have testified before you, and of the weight and value to be given their testimony. In considering and weighing the evidence for the purpose of determining the facts in this case, you should use your common sense, your observation, your knowledge of human nature and human motives, and your experience in human affairs. In determining what credit you will give to the testimony of a witness, you may take into consideration the interest of

the witness, if any, in the result of this trial, the reasonableness or the unreasonableness of his or her statements; the apparent truthfulness of a witness or want of it, his means of knowing the facts about which he testifies, his manner of giving testimony; whether or not the witness has been impeached, and the conduct and demeanor of the witness on the stand. All these matters being taken into account by you, together with all the other facts and circumstances in evidence before you, it is your province and your duty to give to each witness such credit, and the testimony of such witness such weight and value as you believe it should have.' Now, Gentlemen, I don't believe that I can state that any more clearly to you than as stated in these Instructions—"

Thereupon the following proceedings were had in connection with the foreman's statement:

"By Mr. King: I don't think the court should— By the Court: Now, you can state your objections when I get through; I will let you make your record on this but I don't dare to be interrupted. You must consider the instructions as the law of the case. You have the highest province of anybody in the world—nobody can determine the guilt or innocence of this person except you people based upon the evidence that comes from the witness stand. You are a representative group of citizens I know because you have been selected by men who I selected to obtain a representative group of citizens to serve on this jury, and I think you should go back and deliberate for awhile longer on this matter and I will send you back for awhile, at least. Now go back in custody of the bailiff for further deliberation under the admonitions which I told you awhile ago. By Mr. King: Let the record show that the Defendant takes exceptions to all comment of the Court to the jury at this time."

We are of the opinion that the oral instruction thus given did not alter the written instructions given and

were not confusing to the jury and, therefore, the same does not constitute reversible error. In this connection, see Coatney v. State, 52 Okla. Cr. 70, 2 P. 2d 604:

"Where oral explanations by the court are made which do not materially alter the written instructions, and which have no tendency to confuse the jury, the verdict will not be disturbed."

To the same effect is Walters v. State, 45 Okla. Cr. 429, 283 P. 1033 and Bird v. State, 22 Okla. Cr. 263, 210 P. 925. In this connection, however, in the latter case the court called attention to the fact that while the same may not constitute reversible error, instructions partly in writing and partly oral should be avoided for the reason that such practice is likely to be confusing both to the jury and to the appellate court charged with passing upon their sufficiency. We, therefore, suggest that as far as it is possible oral instructions be avoided. In addition to the foregoing, the written instructions not being confusing to the jury, we are of the opinion that the same were not prejudicial to the rights of the defendant.

For all of the above and foregoing reasons, the judgment and sentence herein imposed is affirmed.

BAREFOOT, P. J., and JONES, J., concur.